UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>GENERAL ELECTRIC COMPANY<br><br>        Defendant. | )<br>)<br>)<br>)<br>)   Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and the United States Attorney for the Northern District of New York, through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and avers as follows:

### STATEMENT OF THE CASE

1. This is a civil action brought pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9606 and 9607, as amended ("CERCLA"). The United States seeks injunctive relief and recovery of the unreimbursed response costs it has incurred and will incur in connection with the Hudson River PCBs Superfund Site ("Site") located in the State of New York. The entire Site includes a nearly 200 river-mile stretch of the Hudson River in eastern New York State. The Upper Hudson River portion of the Site extends from the Fenimore Bridge in the Village of Hudson Falls to the Federal Dam at Troy, a distance of just over 43 river miles.

-2-

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to Sections 106, 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9606, 9607 and 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in this judicial district pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. §§ 1391(b) and 1391(c), because the claims arose, certain of the threatened or actual releases of hazardous substances occurred, and the Defendant General Electric Company ("Defendant") resides, in this district.

## THE DEFENDANT

4. Defendant is a New York corporation doing business in the Northern District of New York.

5. The Defendant is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## STATUTORY BACKGROUND

6. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. §§ 9604(a), 9601(25).

7. Under Section 104(a)(1) of CERCLA, as amended:

> Whenever (A) any hazardous substance is released or there is a substantial threat
> of such a release into the environment, or (B) there is a release or substantial
> threat of release into the environment of any pollutant or contaminant which may
> present an imminent and substantial danger to the public health or welfare, the
> President is authorized to act, consistent with the national contingency plan, to

-3-

> remove or arrange for the removal of, and provide for remedial action relating to
> such hazardous substance, pollutant, or contaminant at any time (including its
> removal from any contaminated natural resource), or take any other response
> measure consistent with the national contingency plan which the President deems
> necessary to protect the public health or welfare or the environment . . . .

42 U.S.C. § 9604(a)(1).

8. Section 106(a) of CERCLA provides, in addition to the President's authority to

undertake response actions under Section 104 of CERCLA, that:

> [W]hen the President determines that there may be an imminent and substantial
> endangerment to the public health or welfare or the environment because of an
> actual or threatened release of a hazardous substance from a facility, he may
> require the Attorney General of the United States to secure such relief as may be
> necessary to abate such danger or threat. . . .

42 U.S.C. § 9606(a).

9. For CERCLA response actions and enforcement purposes, the Administrator of EPA

is the President's delegate, as provided in operative Executive Orders, and, within certain limits,

the Regional Administrators of EPA have been re-delegated these authorities.

10. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides:

> Notwithstanding any other provision or rule of law, and subject only to the
> defenses set forth in subsection (b) of this section--
>
> (1)    the owner and operator of a vessel or a facility,
>
> (2)    any person who at the time of disposal of any hazardous
>        substance owned or operated any facility at which such
>        hazardous substances were disposed of,
>
> (3)    any person who by contract, agreement, or otherwise
>        arranged for disposal or treatment, or arranged with a
>        transporter for transport for disposal or treatment, of
>        hazardous substances owned or possessed by such person,
>        by any other party or entity, at any facility or incineration
>        vessel owned or operated by another party or entity and

-4-

containing such hazardous substances, and

(4)     any person who accepts or accepted any hazardous
        substances for transport to disposal or treatment facilities,
        incineration vessels or sites selected by such person, from
        which there is a release, or a threatened release which
        causes the incurrence of response costs, of a hazardous
        substance, shall be liable for--

        (A)     all costs of removal or remedial action incurred by
                the United States Government . . . not inconsistent
                with the national contingency plan . . . .

## GENERAL AVERMENTS

11.  The entire Site encompasses approximately the lower two thirds of the generally southerly flowing Hudson River, from the Village of Hudson Falls in the north to the Battery in New York City in the south.  The Site also includes five Remnant Deposits, which are areas of PCB-contaminated sediment upstream of the location of the former Fort Edward Dam that became exposed after the water level dropped following removal of the dam in 1973.

12.  During an approximate 30-year period ending in 1977, the Defendant used polychlorinated biphenyls ("PCBs") in its capacitor manufacturing operations at its Hudson Falls and Fort Edward, New York facilities.  Oils containing such PCBs were discharged both directly and indirectly from these plants into the Hudson River.  Estimates of the total quantity of PCBs discharged directly from the two plants into the river from the 1940s to 1977 are as high as 1,330,000 pounds (about 605,000 kg).  PCBs have also been released into the Hudson River from these plants in the years since 1977.

13.  Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, in September, 1984, EPA placed the Hudson River PCBs Superfund Site on the National Priorities List ("NPL").  The

-5-

NPL, codified at 40 C.F.R. Part 300, Appendix B, has been promulgated pursuant to Section

105(a)(8)(B) of CERCLA, 42 U.S.C. § 9605(a)(8)(B).

14.  PCBs are hazardous substances within the meaning of Section 101(14) of CERCLA,

42 U.S.C. § 9601(14).

15.  Substances defined as hazardous substances pursuant to Section 101(14) of

CERCLA, 42 U.S.C. § 9601(14), have been found at the Site.  These substances include PCBs.

Once introduced into the river, PCBs adhere to sediments, with some fraction being carried in the

water column.

16.  PCBs have been detected at the Site in various locations, including but not limited to,

water, sediments, biota, and soils.

17.  In February 2002, EPA issued a Record of Decision ("ROD") selecting a remedy for

the Upper Hudson River portion of the Site.  The remedy includes the targeted environmental

dredging of approximately 2.65 million cubic yards of PCB-contaminated sediment from the

Upper Hudson River.  The ROD calls for the dredging to be performed in two phases.

18.  Pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, EPA has taken actions in

"response," as defined in 42 U.S.C. § 9601(25), to releases or threatened releases of hazardous

substances at or from the Site.

19.  The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C.

§ 9601(9).

20.  Defendant falls within the categories of liable parties within the meaning of Section

107(a) of CERCLA, 42 U.S.C. § 9607(a).

21.  There have been and continue to be "releases" of "hazardous substances" within the

-6-

meaning of Sections 101(22) and (14) of CERCLA, 42 U.S.C. §§ 9601(22) and (14), into the environment at and from the Upper Hudson River portion of the Site.

## FIRST CLAIM FOR RELIEF

### INJUNCTIVE RELIEF UNDER CERCLA SECTION 106(a)

22. Paragraphs 1 through 21, inclusive, are reaverred and incorporated herein by reference.

23. In accordance with Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the Regional Administrator of EPA, Region 2, has determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of the actual and/or threatened releases of hazardous substances at and from the Site.

24. Pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the Defendant is liable to perform certain response actions selected by EPA in order to abate the conditions at the Upper Hudson River portion of the Site that present or may present an imminent and substantial endangerment to the public health or welfare or the environment.

## SECOND CLAIM FOR RELIEF

### COST RECOVERY UNDER CERCLA SECTION 107(a)

25. Paragraphs 1 through 24, inclusive, are reaverred and incorporated herein by reference.

26. The releases or threatened releases of hazardous substances at the Site have caused the United States to incur response costs as defined by Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), in connection with the Site. The United States will continue to incur response costs in connection with the Site in the future.

-7-

27.  The costs of the response actions taken and to be taken by the United States in connection with the Site are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

28.  Pursuant to Section 107(a), 42 U.S.C. § 9607(a), Defendant is liable to the United States for the response costs incurred and to be incurred by the United States in connection with the Site.

PRAYER FOR RELIEF

WHEREFORE, plaintiff, the United States of America, respectfully requests that this Court:

1.  on the First Claim for Relief, enter judgment against the Defendant and in favor of the United States, ordering the Defendant to perform certain response actions selected by EPA in order to abate the conditions at the Site.

2.  on the Second Claim for Relief, enter judgment against the Defendant and in favor of the United States, for all unreimbursed response costs incurred or to be incurred by the United States, and a declaratory judgment for future response costs incurred by the United States, in connection with the Site, including enforcement costs, the cost of any health assessment or health effects study relevant to the Site, and interest;

-8-

3. award the United States its costs of this action; and

4. grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

*Kelly A. Johnson*
KELLY A. JOHNSON
Acting Assistant Attorney General
Environment and Natural
 Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530

BRIAN DONOHUE, Senior Attorney
PETER KAUTSKY, Trial Attorney
Environmental Enforcement Section
Environment and Natural
 Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530

-9-

GLENN T. STUDDABY
United States Attorney
Northern District of New York

By: _____

BARBARA COTTRELL
Assistant U.S. Attorney
Northern District of New York
445 Broadway
Albany, New York 12207-2924
(518) 431-0247

Of Counsel

DOUGLAS FISCHER
Assistant Regional Counsel
U.S. Environmental Protection Agency
290 Broadway
New York, New York  10007-1866

Dated: September __, 2005