IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

v.

GENERAL ELECTRIC CO.,

Defendant.

CIVIL ACTION NO. **1:05-CV-1270
(DNH)(DRH)**

CONSENT DECREE

## TABLE OF CONTENTS

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV. DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V. GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . 13

VII. REMEDY REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS . . . . . . . . . . . . . . . . . . . . . . 24

IX. ACCESS AND INSTITUTIONAL CONTROLS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

X. REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . 34

XII. PROJECT COORDINATORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XIII. ASSURANCE OF ABILITY TO COMPLETE WORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XIV. CERTIFICATION OF COMPLETION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

XV. EMERGENCY RESPONSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

XVI. PAYMENTS FOR RESPONSE COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

XVII. INDEMNIFICATION AND INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

XVIII. FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

XIX. DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

XX. STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

XXI. COVENANTS NOT TO SUE BY PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

XXII. COVENANTS BY SETTLING DEFENDANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION . . . . . . . . . . . . . . . . . . . . . . 67

XXIV. CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

XXV. ACCESS TO INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

XXVI. RETENTION OF RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

XXVII. NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

XXVIII. EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

XXIX. RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

XXX. Appendices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74

XXXI. Community Relations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

XXXII. Modification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

XXXIII. Lodging and Opportunity for Public Comment . . . . . . . . . . . . . . . . . . . . . . . . . 75

XXXIV. Signatories/Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

XXXV. Final Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

# I. BACKGROUND

A.     The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607.

B.     The United States in its complaint seeks, *inter alia*: (1) reimbursement of costs incurred and to be incurred by EPA and the Department of Justice for response actions at the Hudson River PCBs Superfund Site (the "Site") in the State of New York, together with accrued interest; and (2) performance of response work by the defendant at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.     In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of New York (the "State") by letter dated February 4, 2002 of negotiations with General Electric Company ("Settling Defendant") regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.     In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), by letter dated February 4, 2002, EPA notified the U.S. Department of the Interior and the National Oceanic and Atmospheric Administration of negotiations with Settling Defendant regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship at the Site and encouraged the trustees to participate in the negotiation of this Consent Decree.

E.     By entering into this Consent Decree Settling Defendant does not admit any liability to the Plaintiff or any other person or entity arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

F.     Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 21, 1984, 49 Fed. Reg. 37070.

G.     In September 1984, EPA issued a Record of Decision for the Site which included: (i) an interim no action decision with regard to polychlorinated biphenyls ("PCBs") in the sediments of the Upper Hudson River; (ii) in-place capping, containment, and monitoring of Remnant Deposit sediments, and stabilization of the associated riverbanks and revegetation of those areas; and (iii) a detailed evaluation of the Waterford Water Works treatment facilities, including sampling and analysis of treatment operations to see if an upgrade or alteration of the facilities was needed.

H.     Pursuant to a 1990 consent decree with EPA, Settling Defendant implemented the remedial action for the Remnant Deposits that was selected in the 1984 Record of Decision. Settling Defendant is conducting maintenance and long-term monitoring activities under that consent decree.

I.      NYSDEC, with EPA funding, conducted a treatability study at the Waterford Water Works. The study was released in 1990 and found that PCB concentrations in Hudson River water were below analytical detection limits after treatment at the Water Works and met standards applicable to public water supplies.

J.      In 1989, EPA decided to reassess the interim no-action decision in the 1984 Record of Decision with respect to PCB-contaminated Hudson River sediments. Beginning in 1990, EPA conducted a Reassessment Remedial Investigation and Feasibility Study which included, *inter alia*, analyses of the fate, transport, and human health and environmental risks associated with PCB contamination at the Site.

K.      In December 2000, EPA issued the Reassessment Feasibility Study ("FS") in which the Agency evaluated potential remedial alternatives to address PCB contamination at the Site. Concurrently with the Reassessment FS, EPA issued a Proposed Plan in which EPA identified its preferred remedial alternative for the Site.

L.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, on December 6, 2000 EPA published notice of the completion of the FS and of the Proposed Plan for remedial action in a major local newspaper of general circulation. EPA held a public comment period on the Proposed Plan and supporting information from December 12, 2000 through April 17, 2001. Copies of the transcripts of the public meetings are available to the public as part of the administrative record upon which EPA based the selection of the response action.

M.      On February 1, 2002, EPA issued a Record of Decision in which EPA selected a remedial action for the Site. The remedy selected in the ROD includes, *inter alia*, the targeted dredging and off-site disposal of PCB-contaminated sediment from the Upper Hudson River. In the ROD, EPA estimated that the remedial action will remove approximately 2.65 million cubic yards of such sediment from the Upper Hudson River. The State concurred on the remedy selected in the ROD. The ROD includes a responsiveness summary to the public comments received on the Proposed Plan. Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

N.      On February 4, 2002, EPA issued a notice letter to Settling Defendant pursuant to the "special notice" procedures of Section 122(e) of CERCLA, 42 U.S.C. § 9622(e). The notice letter requested that Settling Defendant inform EPA as to whether it would voluntarily finance or perform the remedial design and remedial action for the selected remedy identified in the ROD, and reimburse the United States for Site-related past response costs, plus interest.

O.      On July 23, 2002, EPA signed Administrative Order on Consent Index No. CERCLA-02-2002-2023, pursuant to which the Settling Defendant agreed, *inter alia*, to conduct sampling, analysis, and geophysical characterization of Hudson River sediments.

P.      On August 13, 2003, EPA signed Administrative Order on Consent for Remedial Design and Cost Recovery, Index No. CERCLA-02-2003-2027, pursuant to which Settling Defendant agreed, *inter alia,* to perform remedial design activities needed for implementation of the remedial action selected in the ROD.

Q.      Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by the Settling Defendant if conducted in accordance with the requirements of this Consent Decree.

R.     Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the ROD and the Work to be performed by the Settling Defendant shall constitute a response action taken or ordered by the President.

S.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.  Jurisdiction

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over the Settling Defendant.  Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to the jurisdiction of the Court or to venue in this District.  Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  Parties Bound

2.     This Consent Decree applies to and is binding upon the United States and upon Settling Defendant and its successors and assigns.  Any change in ownership or corporate status of the Settling Defendant, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the Settling Defendant's responsibilities under this Consent Decree.

3.     Settling Defendant shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each entity representing Settling Defendant with respect to the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree and applicable law.  Settling Defendant or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree.  Settling Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree; provided, however, that for the purposes of this sentence, rail carriers shall not be considered contractors or subcontractors to Settling Defendant.  Notwithstanding the proviso in the preceding sentence, Settling Defendant shall remain responsible for ensuring that the sediments dredged in connection with the Remedial Action are properly disposed of at an approved off-site facility.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be acting in connection with a contractual relationship with the Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

IV. Definitions

4.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations as of the Effective Date of this Consent Decree.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"Approved Design Documents" shall mean the detailed plans and specifications for the Remedial Action that are approved by EPA pursuant to the RD AOC.  The Approved Design Documents are to include the Phase 1 Final Design Report, the Phase 2 Final Design Report, the Remedial Action Community Health and Safety Plans, the Environmental Monitoring Plans for Phases 1 and 2 of the Remedial Action, and any EPA-approved revisions or addenda to such documents.

"ATSDR" shall mean the Agency for Toxic Substances and Disease Registry.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 - 9675.

"Certification Unit" shall mean an area developed in accordance with EPA's April 2004 *Engineering Performance Standard for Dredging Residuals* (and as such areas may be modified, if at all, for Phase 2) for the post-dredging sampling program and the subsequent statistical evaluation of post-dredging surface sediment data.

"Consent Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXX).  In the event of conflict between the body (i.e., Sections I-XXXV) of this Consent Decree and any appendix, the body of this Consent Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day.  "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 127.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"EPA Phase 1 Evaluation Report" shall mean the report to be prepared by EPA as described in subparagraph 13.b.

"Existing Contamination" shall mean any hazardous substances, pollutants or contaminants, present or existing on or under the Sediment Processing/Transfer Facility Property(ies) as of the date of signature of this Consent Decree by Settling Defendant, except that Existing Contamination does not include PCBs that moved from the Hudson River onto such Property(ies) as a result of natural forces.

"Federal Trustees for Natural Resources" shall mean the National Oceanic and Atmospheric Administration of the U.S. Department of Commerce, and the United States Fish and Wildlife Service and the National Park Service of the U.S. Department of the Interior.

4

"Fish Consumption Advisories and Fishing Restrictions" shall mean institutional controls that are required by the ROD and are implemented and/or modified by the responsible governmental authorities, including NYSDOH or other agency of the State, and that establish health advisories concerning PCBs and are related to the consumption of fish from the Hudson River and health-based restrictions related to fishing in the Hudson River.

"GE Phase 1 Evaluation Report" shall mean the report to be prepared by Settling Defendant pursuant to subparagraph 13.b.

"Institutional Controls" shall mean administrative and/or legal tools that limit land or resource use or otherwise help to minimize the potential for human exposure to contamination and protect the integrity of the remedy. Institutional controls may include, but are not limited to, informational tools (such as fish consumption advisories), governmental controls (such as bans on fishing for consumption purposes), proprietary controls (such as easements and/or restrictive covenants), and contractual agreements.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Interim Response Costs" shall mean all direct and indirect costs (a) paid by EPA, or by the U.S. Department of Justice on behalf of EPA, in connection with the Site between July 1, 2004 (or June 27, 2004 with respect to EPA payroll costs and July 25, 2004 with respect to U.S. Department of Justice costs) and the Effective Date, or (b) incurred by such parties in connection with the Work Area prior to the Effective Date but paid after that date.

"Lower Hudson River" shall mean the Hudson River from the Federal Dam in Troy, New York (River Mile 153.9) downstream to the Battery in New York City.

"Managing Contractor(s)" shall mean the contractor(s) retained by Settling Defendant to assist it in managing the implementation of the Work under this Consent Decree.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Non-Capped Phase 1 Costs" shall mean all direct and indirect costs, not inconsistent with the NCP, that EPA, or the U.S. Department of Justice on behalf of EPA, incurs: (1) to enforce this Consent Decree prior to the Phase 2 Election Date; and (2) to enforce any surviving obligations Settling Defendant has under the Consent Decree in the event that Settling Defendant notifies EPA pursuant to subparagraph 15.c., below, that Settling Defendant will not implement Phase 2 of the Remedial Action pursuant to this Consent Decree.

"Non-Capped Phase 2 Costs" shall mean all direct and indirect costs, not inconsistent with the NCP, that EPA, or the U.S. Department of Justice on behalf of EPA, incurs for one or more of the following purposes between the Phase 2 Election Date and the date of Certification of Completion of the Remedial Action pursuant to Paragraph 57, below: (a) to enforce this Consent Decree; (b) to engage in dispute resolution activities pursuant to Section XIX (Dispute

Resolution); (c) to take actions pursuant to Section XV (Emergency Response); and (d) to acquire real property interests, or to assist in the acquisition of real property interests, needed for the Remedial Action (including, but not limited to, the cost of attorney time and just compensation paid in connection with acquiring such real property interests).

"NYSDEC" shall mean the New York State Department of Environmental Conservation and any successor departments or agencies of the State.

"NYSDOH" shall mean the New York State Department of Health and any successor departments or agencies of the State.

"Operation, Maintenance and Monitoring" or "OM&M" shall mean all activities required to monitor and maintain the effectiveness of the Remedial Action in accordance with the Operation, Maintenance and Monitoring plans that are required pursuant to the SOW and approved by EPA, and all other activities required pursuant to those plans.

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Party" or "Parties" shall mean the United States and/or the Settling Defendant.

"Past Response Costs" shall mean all direct and indirect costs not previously reimbursed by Settling Defendant, that EPA, the U.S. Department of Justice on behalf of EPA, or ATSDR, paid at or in connection with the Site through June 30, 2004 (or June 26, 2004 with respect to EPA payroll costs and July 24, 2004 with respect to U.S. Department of Justice costs), plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Peer Review" shall mean the independent external peer review conducted in accordance with Paragraph 14 of this Consent Decree.

"Phase 1" shall mean all parts of the Remedial Action that are needed for the implementation and evaluation of the first construction season of remedial dredging at the Work Area.  Phase 1 includes, but is not limited to, the dredging conducted during that season, the construction of the Sediment Processing/Transfer Facility(ies) needed for Phase 1 dredging, the processing and off-site disposal of such dredged sediments, the preparation and finalization of the Phase 1 Evaluation Reports, and the Peer Review.

"Phase 1 Engineering Performance Standards" shall mean the performance standards for dredging-related resuspension, dredging residuals and dredging productivity, including the associated action levels and sampling, monitoring, contingency, record keeping and/or reporting elements of those standards, that are set forth in EPA's April 2004 *Engineering Performance Standards* for the Site, as modified by the Performance Standards Compliance Plan Scope and the Remedial Action Monitoring Scope, which are attachments to the Statement of Work at Appendix B of this Consent Decree.

"Phase 1 Quality of Life Performance Standards" shall mean the performance standards for air quality, noise, odor, lighting and navigation, including the associated action levels and sampling, monitoring, contingency, record keeping and/or reporting elements of those standards, that are set forth in EPA's May 2004 *Hudson River PCBs Superfund Site Quality of Life Performance Standards*, as modified by the Performance Standards Compliance Plan Scope and the Remedial Action Monitoring Scope.

"Phase 1 RA Response Costs" shall mean all direct and indirect costs, not inconsistent with the NCP, that EPA, or the U.S. Department of Justice on behalf of EPA, or ATSDR, incurs prior to the Phase 2 Election Date, in connection with (a) reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying or overseeing the Work, or otherwise implementing or overseeing this Consent Decree; (b) conducting any other activities related to the Work, including but not limited to community relations activities (including the cost of maintaining EPA's Hudson River Field Office); (c) obtaining access for the Work required hereunder, or property interests for or relating to the Sediment Processing/Transfer Facility(ies) needed for the Remedial Action; (d) Institutional Controls relating to the Site; and (e) performing any other activities related to the Remedial Action, including but not limited to (i) preparation of EPA's Phase 1 Evaluation Report, and the Peer Review of the Phase 1 Evaluation Reports, (ii) evaluation of remedial operations with respect to the Phase 1 Engineering Performance Standards and the Phase 1 Quality of Life Performance Standards; and (iii) developing, evaluating and/or requiring adjustments to the remedial operations, the Phase 1 Engineering Performance Standards, the Phase 1 Quality of Life Performance Standards, and/or to the scope of Phase 2. Phase 1 RA Response Costs shall also include all Interim Response Costs, and all RD Response Costs, as defined in the RD AOC, which have not already been reimbursed by Settling Defendant and are not otherwise included within the definition, above, of Interim Response Costs.  Phase 1 RA Response Costs include, but are not limited to, payroll costs, contractor costs (including annual allocation costs), interagency agreement costs, travel costs, laboratory costs, and the costs incurred, prior to the Phase 2 Election Date, pursuant to Sections VII, IX (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), and XV.  In addition, to the extent that the State participates in any of the activities covered by items (a)-(e) above pursuant to a Cooperative Agreement or Superfund State Contract with EPA, the costs not inconsistent with the NCP that EPA incurs, prior to the Phase 2 Election Date, under such Cooperative Agreement or Superfund State Contract are included within the meaning of Phase 1 RA Response Costs.  Notwithstanding the foregoing, Phase 1 RA Response Costs do not include Past Response Costs, Non-Capped Phase 1 Costs or costs incurred by the United States in performing the Work pursuant to Paragraph 105 (Work Takeover).

"Phase 2" shall mean all parts of the Remedial Action that will be conducted after Phase 1.

"Phase 2 Election Date" shall mean the date when Settling Defendant notifies EPA, pursuant to subparagraph 15.c. of this Consent Decree, whether it will perform Phase 2 of the Remedial Action.

"Phase 2 Engineering Performance Standards" shall mean the performance standards established by EPA for dredging-related resuspension, dredging residuals and dredging productivity, including, but not limited to, the associated action levels and sampling, monitoring, contingency, record keeping and/or reporting elements of those standards, that EPA determines will apply to Phase 2 of the Remedial Action.

"Phase 2 Quality of Life Performance Standards" shall mean the performance standards established by EPA for air quality, noise, odor, lighting and navigation, including, but not limited to, the associated action levels and sampling, monitoring, contingency, record keeping and/or

reporting elements of those standards, that EPA determines will apply to Phase 2 of the Remedial Action.

"Phase 2 RA Response Costs" shall mean all direct and indirect costs, not inconsistent with the NCP, that EPA, or the U.S. Department of Justice on behalf of EPA, or ATSDR, incurs between the Phase 2 Election Date and the date of Certification of Completion of the Remedial Action pursuant to Paragraph 57, below, in connection with (a) reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying or overseeing the Work, or otherwise implementing or overseeing this Consent Decree; (b) conducting any other activities related to the Work, including but not limited to community relations activities (including the cost of maintaining EPA's Hudson River Field Office); (c) obtaining access for the Work required hereunder; (d) Institutional Controls relating to the Site; and (e) performing any other activities related to the Remedial Action.  Phase 2 RA Response Costs include, but are not limited to, payroll costs, contractor costs (including annual allocation costs), interagency agreement costs, travel costs, laboratory costs, and the costs incurred, between the Phase 2 Election Date and the date of Certification of Completion of the Remedial Action, pursuant to Sections VII and IX (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls).  In addition, to the extent that the State participates in any of the activities covered by items (a)-(e) above pursuant to a Cooperative Agreement or Superfund State Contract with EPA, the costs not inconsistent with the NCP that EPA incurs, between the Phase 2 Election Date and the date of Certification of Completion of the Remedial Action, under such Cooperative Agreement or Superfund State Contract are included within the meaning of Phase 2 RA Response Costs.  Notwithstanding the foregoing, Phase 2 RA Response Costs do not include Non-Capped Phase 2 Costs or costs incurred by the United States in performing the Work pursuant to Paragraph 105 (Work Takeover).

"Plaintiff" shall mean the United States.

"Post-Phase 2 Costs" shall mean all direct and indirect costs, not inconsistent with the NCP, that EPA, or ATSDR, or the U.S. Department of Justice on behalf of EPA, incurs in connection with the following activities: (a) conducting the first two periodic reviews pursuant to Paragraph 24, below, following the date of Certification of Completion of the Remedial Action pursuant to Paragraph 57, below; and (b) overseeing Settling Defendant's performance of, or conducting any other activities with respect to, OM&M from the date of Certification of Completion of the Remedial Action until the completion of the second of the two periodic reviews referred to in item (a) immediately above.

"RA Performance Standards" shall mean the Phase 1 Engineering Performance Standards, Phase 2 Engineering Performance Standards, Phase 1 Quality of Life Performance Standards, and Phase 2 Quality of Life Performance Standards; the Remedial Action Objectives and Remediation Goals set forth in Section 9.1 of the ROD; and the Applicable or Relevant and Appropriate Requirements ("ARARs") set forth or referred to in Tables 14-1 through 14-3 of the ROD (with the exception of those ARARs that were waived in the ROD based on technical impracticability (*see* ROD Section 14.2)).  RA Performance Standards also include the requirements set forth in the documents entitled "Substantive Requirements Applicable to Releases of Constituents not Subject to Performance Standards," "Substantive Requirements of State Pollutant Discharge Elimination System Permit for Potential Discharge to the Champlain

8

Canal (land cut above Lock 7)," and "Substantive Requirements of State Pollutant Discharge Elimination System Permit for Potential Discharge to the Hudson River," which EPA provided to Settling Defendant on January 7, 2005.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901-6992k (also known as the Resource Conservation and Recovery Act).

"RD AOC" shall mean the Administrative Order on Consent for Remedial Design and Cost Recovery, Index No. CERCLA-02-2003-2027, which EPA issued to Settling Defendant on August 13, 2003.

"Record of Decision" and "ROD" shall mean the EPA Record of Decision for the Site (including all attachments thereto) that was signed on February 1, 2002 by the Administrator of EPA and the Regional Administrator of EPA Region 2.  The ROD is attached as Appendix A. Due to the large size of Part 3 of the ROD (the Responsiveness Summary), Appendix A includes an electronic copy (on CD-ROM), rather than a paper copy, of Part 3.

"Remedial Action" shall mean those activities, except for Remedial Design and Operation, Maintenance and Monitoring, to be undertaken to implement the ROD, in accordance with the SOW, the final Remedial Design plans and reports, the Remedial Action Work Plans, and other plans approved by EPA.

"Remedial Action Work Plans" and "RA Work Plans" shall mean the Remedial Action Work Plan for Phase 1 Dredging and Facility Operations (required pursuant to Section 2.3 of the SOW), the Remedial Action Work Plan for Phase 2, Year 1 Dredging and Facility Operations (required pursuant to Section 3.1 of the SOW), the Remedial Action Work Plan for Phase 2 Dredging and Facility Operations (required pursuant to Section 3.2 of the SOW), the Remedial Action Work Plan for Phase 1 Facility Site Work Construction (required pursuant to Section 2.1 of the SOW), the Remedial Action Work Plan for Phase 1 Processing Equipment Installation (required pursuant to Section 2.2 of the SOW) and the Remedial Action Work Plan for Phase 2 Facility Construction (required pursuant to Section 3.2 of the SOW), and any revisions and/or addenda thereto.

"Remedial Design" shall mean those activities undertaken to develop detailed plans and specifications for implementation of the Remedial Action.

"Remnant Deposits" shall mean the areas of PCB-contaminated sediment, designated by EPA in the ROD as Remnant Deposit Nos. 1 through 5, that are located in or adjacent to the Hudson River upstream of Rogers Island.

"Reserved OM&M Costs" shall mean all direct and indirect costs that the United States incurs, in connection with the following activities, subsequent to the time period described in the definition, above, of "Post-Phase 2 Costs": (a) conducting periodic reviews pursuant to Paragraph 24, below; and (b) overseeing Settling Defendant's performance of, or conducting any other activities with respect to, OM&M.

"Sampling AOC" shall mean Administrative Order on Consent, Index No. CERCLA-02-2002-2023, which EPA issued to Settling Defendant on July 23, 2002 with respect to the Site.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Sediment Processing/Transfer Facility(ies)" shall mean the facility(ies) at which sediments that are dredged from the Upper Hudson River in connection with the Remedial Action will be dewatered, stabilized (if needed), and then transferred to an appropriate means of transportation for either off-site disposal or beneficial use.

"Sediment Processing/Transfer Facility Property(ies)" shall mean the real properties described in Appendix D.

"Settling Defendant" shall mean General Electric Company.

"Site" shall mean the Hudson River PCBs Superfund Site located in the State of New York.

"Special Account" shall mean the Hudson River PCBs Site Special Account established by EPA within the EPA Hazardous Substances Superfund.

"State" shall mean the State of New York.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Action and Operation, Maintenance and Monitoring at the Site, including all attachments thereto, as set forth in Appendix B to this Consent Decree, and any modifications thereto made in accordance with this Consent Decree.

"United States" shall mean the United States of America.

"Upper Hudson River" shall mean the Hudson River and Champlain Canal from the Fenimore Bridge in Hudson Falls (River Mile 197.3) to the Federal Dam at Troy (River Mile 153.9); provided that the Upper Hudson River does not include (i) the floodplain of the Hudson River or Champlain Canal, other than those parts of the Hudson River shoreline where dredging as part of the Remedial Action will be performed; (ii) the Remnant Deposits; (iii) Settling Defendant's facilities in Hudson Falls and Fort Edward, New York; (iv) any locations in the Hudson River for which NYSDEC selected a remedy in its March 2004 Record of Decision for the GE Hudson Falls Plant Site and in its January 2000 Record of Decision for the GE Fort Edward Plant Site; (v) bedrock that is in the vicinity of Outfall 004 at the GE Fort Edward facility; and (vi) any other bedrock that is in the Upper Hudson River in the vicinity of Settling Defendant's Hudson Falls and Fort Edward facilities and which is or may be a source of PCBs to the Hudson River.

"USACE" shall mean the United States Army Corps of Engineers.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

"Work" shall mean all activities Settling Defendant is required to perform under this Consent Decree, except those required by Section XXVI (Retention of Records).  The Work includes Phase 2 if Settling Defendant notifies EPA, pursuant to subparagraph 15.c., below, that Settling Defendant will implement Phase 2 pursuant to this Consent Decree.

"Work Area" shall mean any area at or near the Site where the Work will be performed, including (i) the Hudson River and Champlain Canal from the upstream end of Rogers Island at

Fort Edward downstream to the Federal Dam at Troy (or, if a Sediment Processing/Transfer Facility is located south of the Federal Dam at Troy, then downstream to the area of the Hudson River which is adjacent to that facility); (ii) the Sediment Processing/Transfer Facility Property(ies); (iii) those locations in the Hudson River and Champlain Canal where sampling or monitoring activities that are part of the Work will be performed; (iv) the shorelines immediately adjacent to those portions of the Hudson River and Champlain Canal where the Work will be performed; and (v) routes across real property that are necessary for access to perform the Work. The Work Area does not include the floodplain of the Hudson River or Champlain Canal except insofar as those areas fall within the definition given in the preceding sentence.

V.   GENERAL PROVISIONS

5.      Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health, welfare and/or the environment at the Site by the implementation of response actions at the Work Area by the Settling Defendant, to reimburse certain response costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling Defendant to the extent provided in this Consent Decree.

6.      Commitments by Settling Defendant  Settling Defendant shall perform Phase 1 of the Remedial Action.  In addition, as provided in subparagraph 15.c., below, Settling Defendant may also perform Phase 2 of the Remedial Action.  Settling Defendant shall finance and perform the Work in accordance with this Consent Decree (including the attachments hereto), the Remedial Action Work Plans, and all other plans, standards, specifications, and schedules set forth or referenced herein or approved by EPA pursuant to this Consent Decree.  To the extent provided in this Consent Decree, Settling Defendant shall also reimburse the United States for Past Response Costs and other costs.  Work done in accordance with the SOW (including the attachments thereto), the submittals required by the SOW and approved by EPA, the Approved Design Documents, and the rest of this Consent Decree, shall be deemed to be done in accordance with the ROD; provided that this sentence does not affect any of the rights afforded to EPA elsewhere in this Consent Decree to require that changes be made to the SOW (including the attachments thereto) and/or to the Approved Design Documents. (For purposes of the preceding sentence only, the Consent Decree does not include the ROD.)

7.      Compliance With Applicable Law.

a.      All activities undertaken by Settling Defendant pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Subject to subparagraph b., below, Settling Defendant must also comply with all ARARs identified in Tables 14-1 through 14-3 of the ROD which pertain to the activities undertaken by Settling Defendant pursuant to this Consent Decree, except to the extent that an ARAR was waived by EPA in the ROD (see Section 14.2 of the ROD).

b.      Under baseline conditions (that is, prior to the implementation of the Phase 1 and Phase 2 dredging), the federal water quality criterion of 0.014 µg/L for PCBs and the State water quality standard of 0.09 µg/L for PCBs, listed in Table 14-1 of the ROD, are sometimes exceeded in the water of the Hudson River below Rogers Island.  Based on the information known to EPA as of the date of lodging of this Consent Decree, EPA believes that the Remedial Action will lead to this water quality criterion and water quality standard being consistently met in the river water in that area.  Settling Defendant is not required by the second sentence of

subparagraph 7.a. above to perform any work, other than the work required pursuant to the SOW or otherwise required pursuant to this Consent Decree, for the purpose of attempting to achieve the 0.014 µg/L federal water quality criterion for PCBs or the 0.09 µg/L New York State Water Quality Standard that are identified on Table 14-1 of the ROD.

      c.     The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

      8.     <u>Permits</u>.

      a.     As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  The Sediment Processing/Transfer Facility(ies) shall be considered on-site for purposes of the CERCLA Section 121(e) permit exemption.  Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

      b.     Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

      c.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

      9.     The ROD acknowledges that source control at Settling Defendant's Hudson Falls and Fort Edward plants is being addressed pursuant to State law.  The ROD states further that, in the event that source control with respect to Settling Defendant's Hudson Falls facility is not successfully implemented pursuant to New York State law, EPA has authorized the performance of an Engineering Evaluation/Cost Analysis to evaluate options for a Non-Time Critical Removal Action at Hudson Falls pursuant to CERCLA in order to ensure that the PCB load to the river near Settling Defendant's Hudson Falls facility is significantly reduced.  As of the United States' signature of this Consent Decree, it is EPA's expectation that if the source control measures at the Hudson Falls plant are successfully and timely implemented, no additional source control measures would be required at that plant, absent new information.  Prior to EPA seeking to require any further source control actions at or near Settling Defendant's Hudson Falls plant or Fort Edward plant, EPA will: (i) notify Settling Defendant and the State of any deficiencies in the source control measures that have been or are being undertaken by the State under State law, or by Settling Defendant pursuant to any administrative agreements between the State and Settling Defendant, or of any releases of PCBs to the Hudson River from the Hudson Falls or Fort Edward plants (or from bedrock and/or soil in the vicinities of those plants) that are not being addressed by the State or pursuant to such administrative agreements, (ii) discuss with the State and Settling Defendant any such alleged deficiencies and the corrective measures and/or additional work that EPA deems necessary, and (iii) provide Settling Defendant with the opportunity to correct such deficiencies or perform such work.  Any EPA decision regarding the need for or choice of such corrective measures or additional work shall not be subject to dispute resolution under Section XIX of this Consent Decree.  Nothing in this Paragraph shall be construed as a covenant not to sue or to take administrative action by the United States.

## VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANT

10.     Selection of Managing Contractor(s).

a.      Settling Defendant shall retain one or more Managing Contractors to assist it in the management of the Work to be performed by Settling Defendant pursuant to Sections VI (Performance of the Work by Settling Defendant), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree.  The selection of the Managing Contractor(s) shall be subject to disapproval by EPA. Within 10 days after the Effective Date of this Consent Decree, Settling Defendant shall notify EPA in writing of the name, title, and qualifications of any contractor(s) proposed to be the Managing Contractor(s).  The proposed Managing Contractor(s), as well as all other contractors and subcontractors who engage in the "practice of engineering" with respect to the Work on behalf of Settling Defendant, as the "practice of engineering" is defined at Section 7201 of the New York State Education Law, must comply with all applicable New York State legal requirements regarding the practice of engineering within the State of New York, including all applicable requirements of the New York State Education Law and Business Corporation Law.

b.      With respect to any contractor proposed to be a Managing Contractor, Settling Defendant shall demonstrate that, where relevant to that contractor's duties, the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP).  The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA.  EPA will issue a notice of disapproval or an authorization to proceed.  If at any time thereafter, Settling Defendant proposes to change a Managing Contractor, Settling Defendant shall give such notice to EPA including the name, title and qualifications of the proposed new Managing Contractor, and must obtain an authorization to proceed from EPA before the new Managing Contractor performs or manages any Work under this Consent Decree.

c.      If EPA disapproves a proposed Managing Contractor, EPA will notify Settling Defendant in writing.  In such event, Settling Defendant shall submit to EPA a list of contractors, including the qualifications of each contractor, that would be acceptable to Settling Defendant within 30 days of receipt of EPA's disapproval of the contractor previously proposed.  EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors.  Settling Defendant may select any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days of EPA's authorization to proceed.

d.      If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendant from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

11.   Remedial Design Plans and Reports.

a.      Notwithstanding any provision of the RD AOC, during the period between the lodging and the effective date of this Consent Decree, Settling Defendant shall provide review drafts of all deliverables under the RD AOC that relate to Phase 2 of the Remedial Action to EPA in accordance with the applicable schedule for submission of such deliverables under the RD AOC.  During this period, EPA and Settling Defendant shall discuss any EPA comments and any revisions requested by EPA.  If the parties agree on revisions to the deliverable in question, Settling Defendant shall make such revisions and submit a final version of the deliverable to EPA within 30 days of the date when the Parties agree on the revisions.  If, during the period between the lodging and effective date of this Consent Decree, EPA and Settling Defendant do not agree on revisions to the deliverable or EPA does not approve a final version of the deliverable, then Settling Defendant shall submit that deliverable for final EPA review no later than 15 days after the effective date of this Consent Decree.

b.      Notwithstanding any provision of the RD AOC, any disputes regarding deliverables submitted by Settling Defendant to EPA pursuant to the RD AOC for which the due date for the submission falls after the effective  date of this Consent Decree shall be subject to the dispute resolution procedures in Section XIX, below, rather than the dispute resolution procedures in the RD AOC.

c.      Each final Remedial Design plan and report that is submitted or finalized pursuant to the RD AOC shall be deemed incorporated into and become enforceable under this Consent Decree upon its approval by EPA and the completion of any dispute resolution regarding such document.

12.   Remedial Action.

a.      Settling Defendant shall implement Phase 1 of the Remedial Action in accordance with (1) this Consent Decree, including all attachments hereto (subject to Paragraph 6, above); (2) the Phase 1 Final Remedial Design plans and reports that have been or are approved or finalized by EPA pursuant to the RD AOC; (3) the Remedial Action Work Plans for Phase 1; and (4) all other work plans, schedules and other requirements relating to Phase 1 which are approved by EPA pursuant to this Consent Decree.  The plans, reports and other requirements referred to in clauses (2), (3) and (4) of this subparagraph shall be consistent with the SOW, and the plans, reports and other requirements referred to in clauses (3) and (4) shall also be consistent with the Phase 1 Final Remedial Design plans and reports that have been or are approved or finalized by EPA pursuant to the RD AOC.

b.      If Settling Defendant notifies EPA, pursuant to subparagraph 15.c. of this Consent Decree, that it will perform Phase 2 of the Remedial Action, Settling Defendant shall implement Phase 2 in accordance with: (1) this Consent Decree, including all attachments hereto (as the SOW may be modified following the Phase 1 dredging); (2) the Phase 2 Final Remedial Design plans and reports that have been or are approved or finalized by EPA pursuant to the RD AOC, as such plans and reports may be modified (in accordance with subparagraph 15.b., below, and/or Section 3 of the SOW) following the Phase 1 dredging; (3) the Remedial Action Work Plans for Phase 2; and (4) all other work plans, schedules and other requirements relating to Phase 2 which are approved by EPA pursuant to this Consent Decree.  The Phase 2 Final Remedial Design plans and reports shall be consistent with the SOW.  Any revisions and/or addenda to the Phase 2 Final

Remedial Design plans and reports (after the EPA decision described in subparagraph 15.b) shall be consistent with the SOW as it may be modified following the Phase 1 dredging.  In addition, the plans, reports and other requirements referred to in clauses (3) and (4) of this subparagraph shall be consistent with the SOW and the Phase 2 Final Remedial Design plans and reports, as the SOW and such plans and reports may be modified following the Phase 1 dredging.

c.      Settling Defendant shall submit to EPA and the State all plans, submittals, or other deliverables required under the SOW in accordance with the applicable deadlines for such submissions.

d.      Unless otherwise directed by EPA, Settling Defendant shall not commence any physical Remedial Action activities prior to EPA's approval of the work plan(s) for such work.

13.     Phase 1 Evaluation Reports

a.      Within 30 days after Settling Defendant completes one month of Phase 1 dredging at the estimated full production rate for Phase 2, Settling Defendant shall provide to EPA a Phase 1 Data Compilation which compiles all the data collected during Phase 1 up to and including that date and that are relevant to the issues identified in subparagraph 14.b., below, and any other topics that EPA has agreed should be included in the charge to the Peer Review Panel.

b.      Within 60 days after Settling Defendant completes one month of Phase 1 dredging operations at the estimated full production rate for Phase 2, EPA and Settling Defendant will each finalize a complete draft of its Phase 1 Evaluation Report (individually, "EPA Phase 1 Evaluation Report" and "GE Phase 1 Evaluation Report") and provide such draft report to the other Party in electronic form.  Each Phase 1 Evaluation Report will include an evaluation of the Phase 1 dredging operations with respect to the Phase 1 Engineering Performance Standards; set forth proposed changes to the Phase 1 Engineering Performance Standards if appropriate; and in general, evaluate the experience gained from the Phase 1 dredging operations insofar as such information is relevant to the issues identified in subparagraph 14.b. and any other issues that EPA has agreed should be encompassed in its charge to the Peer Review panel.

c.      The Parties shall have 14 days (or a longer period, if agreed to by the Parties) after receipt of the draft Phase 1 Evaluation Reports to provide written comments to each other on those reports.  The Parties shall have 10 days following receipt of such comments to have discussions regarding the content, findings and conclusions of the draft Phase 1 Evaluation Reports.  EPA and Settling Defendant will incorporate into the Phase 1 Evaluation Reports those changes and/or additions on which EPA and Settling Defendant have reached agreement, if any.

14.     Peer Review

a.      The Peer Review will evaluate the Phase 1 Evaluation Reports.  The Peer Review will be conducted in accordance with EPA's Science Policy Council Handbook: Peer Review (December 2000), or any applicable updates thereto; the Office of Management and Budget's *Final Information Quality Bulletin for Peer Review* (December 16, 2004), or any applicable updates thereto; and the provisions of this Paragraph.

     b.     The Peer Review panel shall, at a minimum, address the issues raised by the following questions:

     (1)     Does the experience in Phase 1 show that each of the Phase 1 Engineering Performance Standards can consistently be met individually and simultaneously?

     (2)     If not, and if EPA and/or Settling Defendant has proposed modified Engineering Performance Standards, does the experience in Phase 1 and any other evidence before the panel show that it will be practicable to consistently and simultaneously meet the Engineering Performance Standards that are being proposed for Phase 2?

     (3)     If the experience in Phase 1 and other evidence before the panel does not show that it will be practicable to consistently and simultaneously meet the Engineering Performance Standards that are being proposed for Phase 2, can the Phase 1 Engineering Performance Standards be modified so that they could consistently be met in Phase 2, and, if so, how?

     (4)     If EPA and/or Settling Defendant has proposed modifications to the monitoring and sampling program for Phase 2, are the proposed modifications adequate and practicable for determining whether the Phase 2 Engineering Performance Standards will be met?

     c.     The members of the Peer Review panel shall be selected by a neutral person ("the Peer Review Selector") chosen by agreement between EPA and Settling Defendant. If EPA and Settling Defendant cannot agree on a Peer Review Selector within 21 days of the lodging of this Consent Decree, then EPA will choose the Peer Review Selector. In selecting member(s) for the Peer Review panel, the Peer Review Selector shall select persons who have expertise relevant to the nature and scope of the review to be undertaken and shall endeavor to ensure that all relevant areas of expertise are represented on the panel. Panel members shall be impartial, and must not have a conflict of interest. Prior to the Peer Review Selector's selection of Peer Review panel members, both EPA and Settling Defendant will have an opportunity to identify to the Peer Review Selector the appropriate areas of expertise of Peer Review panel members and to recommend to the Peer Review Selector potential members for the panel. The members of the Peer Review panel that reviewed EPA's October 2003 draft Engineering Performance Standards shall be considered for membership on the Peer Review panel. In addition, the Peer Review Selector shall consider for selection such persons as are recommended by EPA or Settling Defendant. Neither EPA nor Settling Defendant shall have *ex parte* communications with the members of the Peer Review panel. Following selection of the panel members, EPA's Peer Review Contractor (a separate entity from the Peer Review Selector) shall manage the conduct of the peer review.

     d.     The Peer Review panel will not evaluate whether the Remedial Action will, or may, achieve the human health and/or environmental objectives of the ROD, nor will the Peer Review panel evaluate whether Phase 2 should be implemented.

e.      EPA will provide Settling Defendant an opportunity to submit proposed charge questions to EPA prior to EPA's finalization of the charge to the Peer Review panel.  EPA also will provide Settling Defendant with an opportunity to review and comment to EPA on EPA's draft charge questions prior to their finalization.  EPA will prepare the final charge questions for the Peer Review panel.  The charge shall include, at a minimum, questions that are in substantially the same form as the questions identified in subparagraph 14.b., above.

f.      EPA will release the Phase 1 Evaluation Reports to the public, and the Peer Review Contractor will release the Phase 1 Evaluation Reports to the Peer Review panel.  EPA will accept public comments on the Phase 1 Evaluation Reports for a period of not less than 30 days.  EPA will compile public comments received on the Phase 1 Evaluation Reports and the Peer Review Contractor will make such comments (along with any written response that EPA and/or Settling Defendant chooses to provide to such comments) available to the Peer Review panel during the period of its review.  When making such public comments available to the Peer Review panel, the Peer Review Contractor will ensure that Settling Defendant's comments, if any, are clearly identified.

g.      The members of the Peer Review panel shall be provided a reasonable and adequate time to conduct the Peer Review.

h.      EPA will provide Settling Defendant and the public with an opportunity to express their views orally to the Peer Review panel on the issues in the charge questions.  At a minimum:

(1)      If the Peer Review Contractor holds an introductory meeting for the Peer Review panel, then Settling Defendant will be given two hours at such meeting to present a review and summary of the Phase 1 data and of Settling Defendant's experience during Phase 1 insofar as such information is relevant to the charge questions; provided , however, that if EPA makes a presentation to the Peer Review panel at the introductory meeting and such presentation lasts longer than two hours, then Settling Defendant shall be given the same amount of time as EPA to present to the panel, up to a maximum of four hours for Settling Defendant's presentation.

(2)      In lieu of holding an introductory meeting for the Peer Review panel, the Peer Review Contractor may initiate the Peer Review panel's review by transmitting to the panel members, by mail or electronic mail, the Phase 1 Evaluation Reports and the charge.  If the Peer Review Contractor plans to do so, then EPA will give Settling Defendant an opportunity to provide the Peer Review Contractor with written or electronic presentation materials that the Peer Review Contractor will forward to the Peer Review panel members.  If Settling Defendant elects to prepare such materials, it must submit such materials to EPA and the Peer Review Contractor no later than 25 days after the later of (i) the date that EPA transmits the draft charge to Settling Defendant, or (ii) the date on which EPA and Settling Defendant exchange draft Phase 1 Evaluation Reports.  The Peer Review

Contractor will transmit Settling Defendant's presentation materials, if any, to the Peer Review panel when the Peer Review Contractor forwards the Phase 1 Evaluation Reports and the charge to the Peer Review panel. Any such presentation materials that Settling Defendant submits to the Peer Review Contractor may only be concerned with topics identified in subparagraph 14.b., above, and any other topics that EPA has agreed should be encompassed in its charge to the Peer Review.

(3)     When the Peer Review panel is deliberating in public, the Peer Review Contractor shall inform the panel that it is free to request clarification from EPA with respect to the EPA Phase 1 Evaluation Report or the charge, from Settling Defendant with respect to the GE Phase 1 Evaluation Report and from EPA and Settling Defendant regarding information contained in and issues raised by their respective presentations to the panel under subsections (1) and (2), above, that are germane to the issues raised by the charge.

(4)     On the initial day of the Peer Review panel's public deliberations, Settling Defendant will be given at least two hours to present its views on the charge questions to the Peer Review panel.

(5)     On the final day of the Peer Review panel's public deliberations, prior to the panel's presentation of its final recommendations with respect to the charge questions, Settling Defendant will be given at least one hour to present its views on the charge questions to the Peer Review panel.

i.     All monitoring and other data and information collected during the Phase 1 dredging with respect to the Phase 1 Engineering Performance Standards will be available to the Peer Review panel through the Peer Review Contractor.

j.     After the Peer Review, the Peer Review Contractor will issue a report (the "Peer Review Report") that will state the Peer Review panel members' conclusions and recommendations with respect to the charge questions. Such report shall be released simultaneously to EPA, Settling Defendant and to the public, and EPA's response, if any, to such report, will also be made available to the public.

15.     Phase 2

a.     Following the Phase 1 dredging, EPA will provide Settling Defendant with an opportunity to discuss with EPA the changes that EPA believes are appropriate, if any, to the Phase 1 Engineering Performance Standards, the Phase 1 Quality of Life Performance Standards, the SOW, and/or the scope of Phase 2, before EPA makes a decision regarding such changes.

b.     After providing Settling Defendant with an opportunity for discussion in accordance with the preceding subparagraph, and after the Peer Review, EPA will notify Settling Defendant, in writing, of EPA's decision regarding changes, if any, to the Phase 1 Engineering Performance Standards, the Phase 1 Quality of Life Performance Standards, the SOW, and the

scope of Phase 2.  Within thirty (30) days of Settling Defendant's receipt of such notification or within such other time as agreed to by the Parties, Settling Defendant shall submit to EPA, for review and approval, the documents required by Section 3.1.1.1 of the SOW.

      c.     No later than August 1, 2008, Settling Defendant shall provide written notice to EPA and the State stating unequivocally whether Settling Defendant will implement, pursuant to this Consent Decree, Phase 2 of the Remedial Action; provided, however, that if EPA does not provide Settling Defendant by June 1, 2008  with written notification of EPA's decision regarding changes, if any, to the Phase 1 Engineering Performance Standards, the Phase 1 Quality of Life Performance Standards, the SOW, and the scope of Phase 2, Settling Defendant shall have until 90 days after its receipt of such written notification to notify EPA and the State, unequivocally and in writing, as to whether Settling Defendant will implement, pursuant to this Consent Decree, Phase 2 of the Remedial Action.  If Settling Defendant notifies EPA that it will implement Phase 2 under this Consent Decree, then Settling Defendant shall proceed to implement and complete that work, in accordance with the SOW and the other requirements of this Consent Decree.  Settling Defendant may not invoke the dispute resolution procedures of Section XIX, below, with respect to whether EPA's notification pursuant to subparagraph 15.b., above, is sufficient to trigger (i) the period for Settling Defendant to provide the notification required by this subparagraph c., or (ii) Settling Defendant's obligation to submit the documents pursuant to subparagraph 15.b., above.

      16.    To help ensure that there is no delay in the transition between Phase 1 and Phase 2 of the Remedial Action, Settling Defendant agrees to undertake those activities necessary to efficiently prepare for the remobilization of contractors and equipment that will be needed to undertake Phase 2 of the Remedial Action; provided, however, that Settling Defendant shall not be required to expend more than $5,000,000 on such activities during the period between the completion of Phase 1 dredging and Settling Defendant's notification pursuant to subparagraph 15.c., above.  The costs of maintaining or owning plant and equipment purchased for Phase 1 shall not be included in computing the $5,000,000 figure.  In addition, the $5,000,000 limit shall not include the costs of Settling Defendant's obligations, under other provisions of this Consent Decree, with respect to the performance of Phase 1. Further, if Settling Defendant notifies EPA pursuant to subparagraph 15.c., above, that Settling Defendant will not perform Phase 2, Settling Defendant shall continue conducting water column monitoring pursuant to the Remedial Action Monitoring Plan for three months following such notification, and shall also, in the year following Phase 1, perform the fish monitoring required by the Remedial Action Monitoring Plan.  Each of Settling Defendant's monthly progress reports submitted pursuant to Paragraph 39, below, that covers a month which falls, in whole or in part, within the period from the completion of Phase 1 dredging through Settling Defendant's notification pursuant to subparagraph 15.c., above, shall specify the activities that Settling Defendant performed during such month, or plans to perform during the next two months, in order to prepare for remobilization of contractors and equipment needed to undertake Phase 2, and the cost of such activities. Within 14 days of EPA's request therefor, Settling Defendant shall also provide EPA with copies of invoices, proof of payment, and other appropriate documentation of these expenditures.

17.    If EPA's notification pursuant to subparagraph 15.b., above, is provided to Settling Defendant during the calendar year which immediately follows the year in which the Phase 1 dredging takes place, then, beginning on the date of EPA's notification pursuant to subparagraph 15.b., above (or earlier, if possible) and prior to the deadline for Settling Defendant's notification to EPA pursuant to subparagraph 15.c., above, Settling Defendant and EPA will work together in good faith to identify and select, by mutual agreement, a discrete area(s) where Phase 2 dredging could be conducted in the remainder of that year; provided, however, that:

a.    Dredging in such area(s) during that season will not be at the full Phase 2 production rate, but at a lower production rate to be determined by agreement of the Parties. The production rate shall be sufficient to dredge such discrete area(s) during that dredging season;

b.    EPA's decision regarding changes, if any, to the Phase 1 Engineering Performance Standards, the Phase 1 Quality of Life Performance Standards, the SOW or the scope of Phase 2 does not require fundamental modifications to aspects of the final Phase 2 remedial design plans and specifications that are applicable to the dredging that would be performed during the remainder of that dredging season;

c.    Under this Consent Decree, no dredging shall be required to commence during the calendar year in which EPA provides the notification referred to in subparagraph 15.b., above, if EPA does not approve or finalize by September 1 of that year, the Remedial Action Work Plan for that year (or, as applicable and in accordance with Section 3.1.1.1 of the SOW, revisions and/or addenda to the RA Work Plan for Phase 1 Dredging and Facility Operations), and any necessary revisions and/or addenda to the Approved Design Documents that are applicable to the dredging that would be performed during the remainder of that dredging season;

d.    All necessary governmental approvals for the performance of the dredging that would be done during the remainder of that dredging season are granted prior to the initiation of such work.  Settling Defendant shall make timely requests for any such necessary government approvals; and

e.    The performance of dredging during that dredging season shall not be necessary if it is rendered infeasible by weather constraints or by operational constraints that are beyond the control of Settling Defendant.

18.    If Settling Defendant notifies EPA that it will undertake Phase 2 pursuant to this Consent Decree, and if the Parties agree on an area(s), pursuant to Paragraph 17, for performing dredging in the remainder of that construction season, Settling Defendant shall undertake such work, subject to the conditions in Paragraph 17.  In such event, Settling Defendant shall commence dredging in that area(s) no later than 30 days after Settling Defendant's submission to EPA of the notification required by subparagraph 15.c., above.  If Settling Defendant elects to undertake Phase 2, but the Parties do not agree on an area pursuant to Paragraph 17 or the conditions in Paragraph 17 are not met, Settling Defendant shall begin the Phase 2 dredging in accordance with the applicable schedule in the EPA-approved RA Work Plan for Phase 2 Dredging and Facility Operations (or in any EPA-approved revisions and/or addenda to the RA Work Plan for Phase 1 Dredging that apply to the first complete year of  Phase 2).

19.    <u>OM&M</u>.  Settling Defendant shall perform the OM&M in accordance with the SOW, including the OM&M Scope which is included as Attachment E to the SOW, and the EPA-approved plans for the OM&M.

20.    <u>Modification of the SOW or Related Work Plans</u>

a.    Notwithstanding Paragraph 12, and except as provided in subparagraph 20.b., below, if EPA determines that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the RA Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this subparagraph to the extent that it is consistent with, and would not materially expand, the scope of the remedy selected in the ROD, and to the extent that it would not materially expand the scope of the Work required by the SOW or the attachments thereto, and further, provided that Settling Defendant shall not be required under this Consent Decree to perform Phase 2 of the Remedial Action unless Settling Defendant notifies EPA, pursuant to subparagraph 15.c., above, that Settling Defendant will implement Phase 2 pursuant to this Consent Decree.

b.    If  Settling Defendant notifies EPA, pursuant to subparagraph 15.c., above, that Settling Defendant will implement Phase 2 pursuant to this Consent Decree, and if during Phase 2 EPA determines that modification to the work specified in the SOW and/or in the work plans developed pursuant to the SOW is necessary to achieve and maintain the Phase 2 Engineering Performance Standards or the Phase 2 Quality of Life Performance Standards, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this subparagraph to the extent that it is consistent with, and would not materially expand, the scope of the remedy selected in the ROD. Any modification required by EPA under this subparagraph may not require the use of equipment or technology that is not commercially available or that is not consistent with standard engineering and construction practices.

c.    Nothing in this Paragraph shall be construed to limit EPA's ability under subparagraph 15.b. above to require changes to the Phase 1 Engineering Performance Standards, the Phase 1 Quality of Life Performance Standards, the SOW, and the scope of Phase 2, or to limit any rights EPA has under the terms of the SOW itself to require changes to be made to the SOW or work plans developed thereunder.

d.    If Settling Defendant objects to any determination made or modification required pursuant to this Paragraph, it may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 83 (record review).  The SOW and/or related work plans shall be modified in accordance with the final resolution of the dispute.

e.    Settling Defendant shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

f.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

21.   Evaluation of Benefits of Remedy

a.      If Settling Defendant notifies EPA, pursuant to subparagraph 15.c, above, that Settling Defendant will implement Phase 2 pursuant to this Consent Decree, then, after Settling Defendant completes at least two construction seasons of Phase 2 dredging, Settling Defendant may submit to EPA a request for EPA to evaluate whether, in light of the experience gained from Settling Defendant's undertaking of the Work and any data gathered in connection with the Work and associated analysis of such data, the project is making reasonable progress toward achieving its human health and environmental protection objectives, as set forth in the ROD.  For purposes of the preceding sentence, a construction season includes a season in which a discrete area(s) is dredged pursuant to Paragraph 17, above.  Any such request shall be supported by relevant data gathered in connection with the Work and associated analysis of such data.  Following its receipt of Settling Defendant's first request pursuant to this Paragraph, EPA will, based on the experience gained from performance of the Work and data gathered in connection with the Work and associated analysis of such data, evaluate whether the project is making reasonable progress toward achieving its human health and environmental protection objectives and, in light of that evaluation, determine whether the scope of Phase 2 and/or the ROD should be changed.  EPA will endeavor to complete such evaluation and make a determination as to whether the scope of Phase 2 and/or the ROD should be changed within five months of EPA's receipt of Settling Defendant's request.  EPA's determination pursuant to this Paragraph shall not be subject to dispute resolution under Section XIX of this Consent Decree.

b.      Settling Defendant shall have two hours to make a presentation to EPA in support of its position on what the results of the evaluation should be.

c.      The fact that EPA is in the process of conducting an evaluation pursuant to this Paragraph shall not relieve Settling Defendant of any of its obligations pursuant to this Consent Decree.

d.      If Settling Defendant submits additional requests for evaluation after EPA's decision on the first request, EPA will decide, in its discretion, whether to conduct an additional evaluation. If EPA determines to conduct a further evaluation, the evaluation will follow the requirements of this Paragraph. EPA's determination as to whether to conduct such an additional evaluation shall not be subject to dispute resolution under Section XIX of this Consent Decree.

22.    Settling Defendant acknowledges and agrees that nothing in this Consent Decree, the SOW, or the Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the RA Performance Standards.

23.    Settling Defendant shall annually, prior to any off-site shipment of Waste Material from the Work Area to a waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state, and to the EPA Project Coordinator and the State, of the anticipated shipments of Waste Material in that year.

a.      Settling Defendant shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. Settling Defendant shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

b.      Settling Defendant shall provide the information required by subparagraph 23.a. as soon as practicable after the award of the contract for disposal and before any Waste Material is actually shipped.

c.      Before shipping any hazardous substances, pollutants, or contaminants from the Work Area to an off-site location, Settling Defendant shall obtain EPA's determination that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440.  Settling Defendant shall send hazardous substances, pollutants, or contaminants from the Work Area only to an off-site facility that has been determined by EPA to be acceptable for the treatment, storage or disposal of such hazardous substances, pollutants or contaminants pursuant to the statutory provision and regulations cited in the preceding sentence.

## VII. Remedy Review

24.     _Periodic Review_.   The long-term monitoring and sampling programs described in the Operation, Maintenance, and Monitoring Scope attached to the SOW have, among their objectives, providing data that will assist EPA in conducting reviews, at least every five years, of whether the Remedial Action is protective of human health and the environment, as required by Section 121(c) of CERCLA and applicable regulations.  In the event that Settling Defendant has notified EPA that it will implement Phase 2 pursuant to this Consent Decree and EPA determines that additional data collection is necessary to undertake the first and/or second periodic review pursuant to Section 121(c) of CERCLA following the completion of the Remedial Action, Settling Defendant shall conduct such additional data collection, as requested by EPA, but shall not be required to expend a combined total of more than $1,500,000 for the additional data collection associated with both such reviews.

25.     _EPA Selection of Further Response Actions_.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

26.     _Opportunity To Comment_.  Settling Defendant and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of a review conducted pursuant to Section 121(c) of CERCLA, and to submit written comments for the record during the comment period.

27.     <u>Settling Defendant's Obligation To Perform Further Response Actions</u>.  If EPA selects further response actions for the Upper Hudson River, Settling Defendant shall undertake such further response actions to the extent that the reopener conditions in Paragraph 100 or Paragraph 101 (United States' reservations of liability based on unknown conditions or new information) are satisfied.  Settling Defendant may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) EPA's determination that the reopener conditions of Paragraph 100 or Paragraph 101 of Section XXI (Covenants Not To Sue by Plaintiff) are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions.  Disputes pertaining to whether the Remedial Action is protective, or to EPA's selection of further response actions, shall be resolved pursuant to Paragraph 83 (record review).

28.     <u>Submissions of Plans</u>. If Settling Defendant is required to perform the further response actions pursuant to Paragraph 27, it shall submit, for EPA approval pursuant to Section XI (EPA Approval of Plans and Other Submissions), a plan(s) for such work within 30 days of EPA's request for such plan(s).  Settling Defendant shall implement the plan(s) approved by EPA in accordance with the provisions of this Consent Decree.

VIII. <span style="font-variant: small-caps">Quality Assurance, Sampling, and Data Analysis</span>

29.     Settling Defendant shall use quality assurance, quality control, and chain of custody procedures for all samples collected in connection with the Work, in accordance with "EPA Requirements for Quality Assurance Project Plans" (QA/R5) (EPA/240/B-01/003, March 2001), "Guidance for Quality Assurance Project Plans" (QA/G-5) (EPA/240/R-02/009, December 2002), subsequent updates and amendments to such guidelines upon notification by EPA to Settling Defendant of such update or amendment, or alternate test methods approved by EPA with respect to such sampling, analysis, and data assessment and monitoring; provided that such alternate test methods are consistent with the procedures specified in the Remedial Action Monitoring Scope attached as Attachment B to the SOW, or any modifications thereto that are agreed upon by EPA and Settling Defendant.  Amended guidelines shall apply only to procedures conducted after such notification.

a.      If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the Quality Assurance Project Plans (QAPPs) that are submitted by Settling Defendant and reviewed and approved by EPA under this Consent Decree, the RD AOC or the Sampling AOC shall be admissible as evidence, without objection, in any proceeding under this Decree.

b.      Settling Defendant shall ensure that EPA personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendant in implementing this Consent Decree.  In addition, Settling Defendant shall ensure that such laboratories analyze all samples submitted by EPA pursuant to the QAPPs for quality assurance monitoring.

c.      Settling Defendant shall ensure that the laboratories it utilizes for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted EPA methods or other methods approved by EPA for the Work.  Accepted EPA methods include, but are not

limited to, those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" (ILM05.3 or the latest revision thereof) and the "Contract Lab Program Statement of Work for Organic Analysis," (OLM04.3 or the latest revision thereof), and any amendments thereto (including amendments made during the course of the implementation of this Consent Decree). All QAPPs submitted pursuant to this Consent Decree shall contain Standard Operating Procedures (SOPs) for all methods specified in such QAPPs. Upon approval by EPA, after opportunity for review and comment by the State, Settling Defendant may use other analytical methods which are as effective in achieving the applicable data quality objectives as the currently-approved EPA methods. Settling Defendant shall ensure that all laboratories used by Settling Defendant for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent quality assurance/quality control ("QA/QC") program. Settling Defendant shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) and the New York State Environmental Laboratory Approval Program ("SELAP") as meeting the Quality System requirements. If Settling Defendant uses a commercial laboratory for analyses for which NELAP or SELAP certification is available, Settling Defendant shall provide documentation to EPA which demonstrates that each laboratory maintains NELAP/SELAP certification for the specific methods/matrices and analyses to be performed. For each analytical method employed for which NELAP or SELAP certification is not available, Settling Defendant shall provide supporting documentation demonstrating how the method has been verified for all matrices to be analyzed. EPA will review Settling Defendant's supporting documentation and will notify Settling Defendant as to whether such method is acceptable. Settling Defendant shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the approved QAPPs.

     30.    Upon request, Settling Defendant shall allow split or duplicate samples of any material, including PE samples and calibration standard materials, to be taken by EPA, the Federal Trustees for Natural Resources, or their authorized representatives. EPA and the Federal Trustees for Natural Resources shall provide copies of the results of the analysis of such samples to Settling Defendant after such results have undergone QA/QC analysis. Settling Defendant also shall allow the State to collect split or duplicate samples of any such material, provided that the State agrees to provide Settling Defendant with copies of the results of the analysis of such samples after those results have undergone QA/QC analysis. Settling Defendant shall notify EPA and the State not less than 14 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA shall have the right to take any additional samples that EPA deems necessary. Upon request, EPA shall allow the Settling Defendant to take split or duplicate samples of any samples it takes as part of its oversight of the Settling Defendant's implementation of the Work.

     31.    Settling Defendant shall simultaneously submit to EPA, the State and the Federal Trustees for Natural Resources copies of the results of all sampling and/or tests or other data

obtained or generated by or on behalf of Settling Defendant that are pertinent to the implementation of this Consent Decree, unless agreed otherwise by the government entity to which such information is to be sent.

32.     Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## IX. ACCESS AND INSTITUTIONAL CONTROLS

33.     If property at the Work Area, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by Settling Defendant, Settling Defendant shall comply with the following:

a.     Commencing on the date of lodging of this Consent Decree, Settling Defendant shall provide the United States, the State and their representatives, including their contractors, with access at all reasonable times to all such property for the purpose of conducting any activity related to this Consent Decree, including the following activities:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States or the State;

(3)     Conducting investigations relating to contamination at or near the Work Area;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Work Area;

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

(7)     Implementing the Work pursuant to the conditions set forth in Paragraph 105 of this Consent Decree;

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XXV (Access to Information);

(9)     Assessing Settling Defendant's compliance with this Consent Decree; and

(10)     Determining whether property at the Work Area or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree.

The Parties recognize that, for such property, Settling Defendant has adopted or will adopt health and safety and security procedures for visitors, and the Parties will work cooperatively to implement a mutually satisfactory means for EPA's and the State's employees and other representatives to comply with those procedures. Further, all Parties' employees, contractors, and other representatives with access to areas where Work is being performed pursuant to this Consent Decree shall comply with all applicable health and safety plans.

b.      Commencing on the date of lodging of this Consent Decree, Settling Defendant shall refrain from using such property, to the extent it has been identified, in any manner that would interfere with or adversely affect the implementation, integrity or protectiveness of the remedial measures to be implemented pursuant to this Consent Decree; and

c.      If EPA so requests, for any such property that is owned by Settling Defendant, Settling Defendant shall execute and record in the Recorder's Office or Registry of Deeds or other appropriate land records office of the appropriate county in the State of New York, an easement/covenant, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree, including, but not limited to, those activities listed in subparagraph 33.a. of this Consent Decree, and (ii) grants the right to enforce any land/water use restrictions mandated under subparagraph 33.b. of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such easement/covenant shall remain in place only for such period as is reasonably necessary to accomplish its purpose. Settling Defendant shall use best efforts to obtain from each holder of a prior lien(s) or encumbrance(s) an agreement to release or subordinate such lien(s) or encumbrance(s) to any easement/covenant requested by EPA pursuant to this Paragraph. Settling Defendant shall grant the access rights and the rights to enforce the land/water use restrictions to one or more of the following persons, as determined by EPA: (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, and/or (iii) other appropriate grantees. Settling Defendant shall, within ninety (90) days of EPA's request, submit to EPA for review and approval with respect to such property:

(1)      A draft easement/covenant, in substantially the form attached hereto as Appendix C that is enforceable under the laws of the State of New York, and acceptable under the Attorney General's Title Regulations promulgated pursuant to 40 U.S.C. § 255; and

(2)      A current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement/covenant to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances). Such title insurance commitment or other evidence of title shall be consistent with the U.S. Department of Justice "Standards for the Preparation of Title Evidence in Land Acquisitions by the United States" (2001) or any updated version thereof (the "Standards").

Within fifteen (15) days of EPA's approval and acceptance of the easement/covenant and the title evidence, Settling Defendant shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment or report to affect the title adversely, the easement/covenant shall be recorded with the Recorder's Office or Registry of Deeds or other appropriate county office.  Within thirty (30) days of the recording of the easement/covenant, Settling Defendant shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement/covenant showing the clerk's recording stamps.  The time limits set forth in this subparagraph shall be extended if, and to the extent that, despite diligent efforts by Settling Defendant, delays in the Recorder's Office or Registry of Deeds or other appropriate county office prevent compliance with such time limits.

34.    If property at the Work Area, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than Settling Defendant, Settling Defendant shall use best efforts to secure from such persons:

a.    an agreement to provide access thereto for Settling Defendant, as well as for the United States on behalf of EPA, the State, and their respective representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree, including those activities listed in subparagraph 33.a of this Consent Decree;

b.    an agreement, enforceable by Settling Defendant and the United States, to refrain from using such property in any manner that would interfere with or adversely affect the implementation or integrity or protectiveness of the remedial measures to be performed pursuant to this Consent Decree; and

c.    if EPA so requests, the execution and recordation in the Recorder's Office or Registry of Deeds or other appropriate land records office of the appropriate county in the State of New York, of an easement/covenant, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree, including those activities listed in subparagraph 33.a. of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions mandated under subparagraph 33.b. of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree.  Such easement/covenant shall remain in place only for such period as is reasonably necessary to accomplish its purpose.  Settling Defendant shall use best efforts to obtain from each holder of a prior lien(s) or encumbrance(s) an agreement to release or subordinate such lien(s) or encumbrance(s) to any easement/covenant requested by EPA pursuant to this Paragraph.  The access rights and/or rights to enforce land /water use restrictions shall be granted to one or more of the following persons, as determined by EPA: (i) The United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the Settling Defendant and its representatives, and/or (iv) other appropriate grantees.  Within ninety (90) days of the request by EPA, Settling Defendant shall submit to EPA for review and approval with respect to such property:

(1)    A draft easement/covenant, in substantially the form attached hereto as Appendix C that is enforceable under the laws of the State of New York, and acceptable under the Attorney General's Title Regulations promulgated pursuant to 40 U.S.C. § 255; and

(2)    A current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement/covenant to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances).  Such title insurance commitment or other evidence of title shall be consistent with the Standards.

Within fifteen (15) days of EPA's approval and acceptance of the easement/covenant and title evidence, Settling Defendant shall update the title search and, if it is determined that nothing has occurred since the Effective Date of the commitment or report to affect the title adversely, the easement/covenant shall be recorded with the Recorder's Office or Registry of Deeds or other appropriate county office.  Within thirty (30) days of the recording of the easement/covenant, Settling Defendant shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement/covenant showing the clerk's recording stamps. The time limits set forth in this subparagraph shall be extended if, and to the extent that, despite diligent efforts by Settling Defendant, delays in the Recorder's Office or Registry of Deeds or other appropriate county office prevent compliance with such time limits.

35.    For purposes of Paragraphs 33 and 34 of this Consent Decree, "best efforts" means good-faith negotiations with the property owner and/or others, including the payment of reasonable sums of money, to obtain access (including agreements, easements and/or covenants for such access), land/water use restrictions (including agreements, easements and/or covenants for such use restrictions), and/or agreements to release or subordinate prior liens or encumbrances.  For purposes of this Paragraph, a "reasonable sum of money" is an amount of consideration which, taking into account the possible transaction costs (including, but not limited to, appraisal costs, attorneys fees, court costs, and consultant/expert witness fees) that would likely be incurred in obtaining the rights in question by judicial or other means, is not significantly out of proportion with the fair market value of the rights to be obtained.  If (a) any access or land/water use restriction agreements required by subparagraphs 34.a. or b. of this Consent Decree are not obtained within ninety (90) days after the date that it becomes reasonably apparent that such access or land/water use restrictions are needed; (b) any access easements or restrictive covenants required by subparagraph 34.c. of this Consent Decree are not submitted to EPA in draft form within ninety (90) days of the date of EPA's request therefor; or (c) Settling Defendant is unable to obtain an agreement as required by subparagraph 33.c. or subparagraph 34.c. from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to this Consent Decree within 90 days of EPA's request for Settling Defendant to obtain such easement, Settling Defendant shall promptly notify EPA in writing, and shall include in that notification a summary of the steps that Settling

Defendant has taken to attempt to comply with Paragraph 33 or 34 of this Consent Decree. The United States may, as it deems appropriate, assist Settling Defendant in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance. Settling Defendant shall reimburse the United States in accordance with the procedures in Section XVI (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, appraisal costs, attorneys fees, court costs, and consultant/expert witness fees, and the amount of monetary consideration paid or just compensation for such interest, provided, however, that Settling Defendant shall not be required to reimburse the United States for monetary consideration paid or just compensation for such interest that is significantly out of proportion with the fair market value of the rights to be obtained. For purposes of the preceding sentence, a determination by a judge, jury or arbiter of the proper amount of monetary consideration or just compensation for such access, land/water use restrictions, and or the release/subordination of prior liens or encumbrances will not be considered to be significantly out of proportion to the fair market value of the rights obtained.

36.   Sediment Processing/Transfer Facilities

a.   Settling Defendant intends to acquire title to, lease, or otherwise acquire rights to use (collectively, "gain possession of") the Sediment Processing/Transfer Facility Property(ies).

b.   In the event that, despite the aforesaid intention of Settling Defendant, EPA gains possession of some or all of the Sediment Processing/Transfer Facility Property(ies), then:

(1)   Following EPA's gaining possession of such real property(ies), EPA will provide Settling Defendant with access to any such property(ies) in order for Settling Defendant to: (i) finish designing (if the design is not already complete) and construct and operate the facility(ies), and (ii) decommission the facility(ies) and restore the facility property(ies) after EPA determines that the facility(ies) is (are) no longer needed for the Remedial Action.

(2)   Settling Defendant's access to such property(ies) shall be subject to all restrictions and conditions regarding the use of such property(ies) that are provided in the deed, lease or other instrument pursuant to which EPA acquires such property interest.

(3)   EPA makes no representations or warranties whatsoever with respect to any properties to which EPA gains possession for the Sediment Processing/Transfer Facility(ies). Pursuant to this Consent Decree, EPA is under no obligation to make alterations or repairs, or to perform construction or any other work, at any such properties.

(4)   Under no circumstances shall Settling Defendant grant to a third party any privilege, license, sublease, or other interest whatsoever in any property to

which EPA has gained possession for the Sediment Processing/Transfer Facility(ies) and to which Settling Defendant is provided access pursuant to subparagraph 36.b.(1), above.

(5)    EPA may, at its discretion, withdraw the access granted to Settling Defendant pursuant to subparagraph 36.b.(1), above, if: (i) EPA determines that Settling Defendant: (a) has ceased implementation of any portion of the Work, other than due to a force majeure event under the provisions of Section XVIII (Force Majeure), (b) is seriously or repeatedly deficient or late in its performance of the Work, other than due to a force majeure event under the provisions of Section XVIII (Force Majeure), or (c) is implementing the Work in a manner which may cause an endangerment to human health or the environment; (ii) Settling Defendant fails to comply with the terms of the deed, lease or other instrument pursuant to which EPA gains possession of such property; or (iii) Settling Defendant fails to comply with any material requirements that are imposed by EPA with respect to Settling Defendant's access to any such property. Settling Defendant shall surrender possession of all such properties to EPA within 24 hours of its receipt of EPA's written withdrawal of access, or as otherwise directed by EPA.

c.    Settling Defendant shall conduct all Work on the Sediment Processing/Transfer Facility Property(ies) in accordance with this Consent Decree and all relevant reports and plans approved by EPA pursuant to this Consent Decree.

d.    EPA, the State, and their representatives (including contractors) shall have full access at any time to all property to which Settling Defendant has gained possession for the Sediment Processing/Transfer Facility(ies). Such access shall be subject to the provisions in the last two sentences of subparagraph 33.a., above. All activities performed by Settling Defendant at any such property shall be subject to the general supervision and approval of EPA and its authorized representatives (including contractors).

e.    Restoration of Real Property

(1)    All real property used for the Sediment Processing/Transfer Facility(ies), for access roads, for booster pumps, or for other plant, piping or equipment used in the Remedial Action shall, following its use in the Remedial Action, be restored by Settling Defendant in accordance with the SOW, the Phase 1 Facility Demobilization and Restoration Plan, the Phase 2 Facility Demobilization and Restoration Plan, and the NCP; provided that, unless Settling Defendant notifies EPA pursuant to subparagraph 15.c., above, that it will implement Phase 2, Settling Defendant only agrees under this subparagraph 36.e.(1) to restore real property which was used for Phase 1. The restoration conducted under this subparagraph shall include removal of all hazardous substances, pollutants or contaminants, petroleum (including crude oil or any fraction thereof), natural gas, natural gas liquids, liquefied natural gas, and synthetic gas useable for fuel, that

31

came to be located on any such real property as a result of Settling Defendant's use of such property for the Remedial Action, although Settling Defendant shall have no obligation under this Consent Decree to remove or otherwise remediate any such materials that did not come to be located on such real property as a result of Settling Defendant's use of such property for the Remedial Action.

(2)    For any properties used for the Sediment Processing/Transfer Facility(ies) and that are to be restored by Settling Defendant, Settling Defendant shall consult with the municipalities in which such properties are located regarding the anticipated future land use of those properties (such as redevelopment for commercial or recreational use) prior to restoring the properties. If any of the properties are owned by a person or entity other than Settling Defendant, then Settling Defendant shall encourage the property owner to consult with the municipality regarding the anticipated future land use of such properties prior to Settling Defendant's restoration of those properties. If any of the properties are owned by Settling Defendant, then Settling Defendant shall restore such property(ies) in a manner that considers the municipality's anticipated future land use. EPA may consult with other stakeholders regarding the anticipated future land use of the properties, and may provide Settling Defendant, the local municipalities and the property owner with stakeholder recommendations that can be considered in connection with the restoration of the properties.

37.    If EPA determines that land /water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the remedy selected in the ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendant shall cooperate with EPA's and the State's efforts to secure such governmental controls, provided that EPA and the State seek such restrictions only of such nature and for such period as is reasonably necessary to accomplish their stated purpose.

38.    Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X. REPORTING REQUIREMENTS

39.    In addition to any other requirement of this Consent Decree, Settling Defendant shall submit to EPA and the State written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include all results of sampling, tests, and all other verified or validated data received or generated by or on behalf of Settling Defendant during the previous month in the implementation of the Work required by this Consent Decree; (c) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next two months and provide other

information relating to the progress of the Work as is customary in the industry, including, but not limited to, a graphical depiction of the progress of the Work; (e) include information regarding all delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Defendant has proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Involvement Plan during the previous month and those to be undertaken in the next two months.  Settling Defendant shall submit these progress reports to EPA and the State by the fifteenth day of every month following the Effective Date of this Consent Decree until EPA notifies the Settling Defendant pursuant to subparagraph 58.b. of Section XIV (Certification of Completion).  If requested by EPA, Settling Defendant shall also provide briefings for EPA and the State to discuss the progress of the Work.  In addition to the addressees listed in Paragraph 125 below, one copy of each monthly progress report shall be sent to:

> Director, Hudson River Field Office
> U.S. Environmental Protection Agency Region 2
> 421 Lower Main Street
> Fort Edward, New York 12839

40.     The Settling Defendant shall notify EPA of any change in the schedule described in a monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the new date for the performance of the activity or the original date for such performance, whichever is earlier.

41.     Upon the occurrence of any event at the Work Area during Settling Defendant's performance of the Work that Settling Defendant is required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), Settling Defendant shall within 24 hours of obtaining knowledge of the onset of such event orally notify EPA's Team Leader, Hudson River Team, Emergency and Remedial Response Division, EPA Region 2, (212) 637-3952 (or, in the event that the Team Leader is not available, either the EPA Project Coordinator or the Alternate EPA Project Coordinator). Settling Defendant shall also provide such oral notification to the NYSDEC Project Manager, Hudson River PCBs Superfund Site, at (518) 402-9676 (or, in the event of the unavailability of the NYSDEC Project Manager, to the Chief of NYSDEC's Hudson River Unit at (518) 402-9770) and to the NYSDOH Bureau of Environmental Exposure Investigation at (518) 402-7850. The reporting requirements of this Paragraph are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.  Settling Defendant shall require its contractors to notify Settling Defendant immediately upon such contractor's obtaining knowledge of any event for which notification is required pursuant to this Paragraph.

42.     Within 14 days of the onset of an event of the type referred to in the preceding Paragraph, Settling Defendant shall furnish to EPA and the State a written report, signed by the Settling Defendant's Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto.  Within 30 days of the conclusion of such

an event, Settling Defendant shall submit a report setting forth all actions taken in response thereto.

43.    Settling Defendant shall submit all plans, reports, and data required by this Consent Decree, the SOW, the Remedial Action Work Plans, or any other plans approved pursuant to this Consent Decree, to EPA in accordance with the schedules set forth in this Consent Decree, the SOW and in such approved plans.

44.    All reports and other documents submitted by Settling Defendant to EPA (other than the monthly progress reports referred to above) which purport to document Settling Defendant's compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendant.

## XI. EPA Approval of Plans and Other Submissions

45.    After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after a reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendant modify the submission; or (e) any combination of the above; provided that any such modifications or directions would not materially expand the scope of the Work required pursuant to this Consent Decree, subject to the provisions of Paragraph 20, above. However, EPA shall not modify a submission without first providing Settling Defendant with at least one notice of deficiency and an opportunity to cure within 21 days (or such longer time as is allowed by EPA), except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.  Where EPA disapproves a submission due to a material defect, EPA's notification of disapproval will be sufficiently clear so that the changes needed to cure the defect can be understood.

46.    In the event of approval, approval upon conditions, or modification by EPA, pursuant to subparagraphs 45(a), (b), or (c), Settling Defendant shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to its right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to subparagraph 45(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

47.    Resubmission of Plans.

a.    Upon receipt of a notice of disapproval pursuant to subparagraph 45(d), Settling Defendant shall, within 21 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval.  Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the 21-day

period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in subparagraphs 47.c. and 47.d.

b.      Notwithstanding the receipt of a notice of disapproval pursuant to subparagraph 45(d), if EPA approves a portion of the submission and determines in writing that the approved portion is not dependent upon the unapproved portion, Settling Defendant shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission while Settling Defendant corrects the deficiencies in the disapproved portion.  For purposes of the schedule in the SOW or any other approved schedule, if EPA approves only a portion of a submission, the time allotted for Settling Defendant's performance of a subsequent task that is dependent upon EPA approval of that submission shall not begin to run until that submission is approved in its entirety, unless EPA determines in writing that the unapproved portion is not necessary for the performance of that subsequent activity.  In the event that Settling Defendant disagrees with an EPA determination regarding whether an approved portion of a submission is, for purposes of this subparagraph, dependent upon an unapproved portion of that submission or whether an unapproved portion of a submission is necessary for the performance of a subsequent activity, Settling Defendant may invoke the Dispute Resolution procedures in Section XIX.  Implementation of any non-deficient portion of a submission shall not relieve Settling Defendant of any liability for stipulated penalties under Section XX (Stipulated Penalties).

c.      In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendant to correct the deficiencies within a time period specified by EPA and otherwise in accordance with the preceding Paragraphs.  EPA also retains the right to modify or develop the plan, report or other item, provided that such modifications would not materially expand the scope of the Work required pursuant to this Consent Decree, subject to the provisions of Paragraph 20, above.  Settling Defendant shall implement any such plan, report, or item as modified or developed by EPA, subject only to its right to invoke the procedures set forth in Section XIX (Dispute Resolution).

d.      If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendant shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendant invokes the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and EPA's action is overturned pursuant to that Section.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution.  If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

e.      All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree.  In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree, subject to the provisions of Paragraph 47.b.

## XII.  Project Coordinators

48.   Designation of Project Coordinators

a.      Settling Defendant's Project Coordinator shall oversee all aspects of the Work. Settling Defendant's Project Coordinator may assign other representatives of Settling Defendant, including contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.  Settling Defendant designates John Haggard as its Project Coordinator and Robert Gibson as its Alternate Project Coordinator.

b.      Within 20 days of lodging this Consent Decree, EPA will notify Settling Defendant, in writing, of the name, address and telephone number of its designated Project Coordinator and Alternate Project Coordinator.

c.      If a Project Coordinator or Alternate Project Coordinator initially designated by any Party is changed, the identity of the successor will be given to the other Party at least 5 working days before the changes occur, unless 5 days is impracticable, but in no event later than the actual day the change is made.  If Settling Defendant proposes a successor to its Project Coordinator or Alternate Project Coordinator, such successor shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work.  The Settling Defendant's Project Coordinator shall not be an attorney for the Settling Defendant in this matter.

49.   Plaintiff may designate other representatives, including, but not limited to, EPA and State employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300.  In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Work Area constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

50.   During construction of the Remedial Action, Settling Defendant's Project Coordinator (or Alternate Project Coordinator) shall be available to meet with EPA's Project Coordinator (or Alternate Project Coordinator), at a minimum, on a weekly basis unless a less frequent schedule is agreed to by EPA.

## XIII.  Assurance of Ability to Complete Work

51.   Within 30 days of entry of this Consent Decree, Settling Defendant shall demonstrate its financial ability to complete Phase 1 of the Remedial Action by submitting to EPA a copy of Settling Defendant's most recent Annual Report.  Each year thereafter, until the completion of Phase 1, Settling Defendant shall submit its most recent Annual Report to EPA within thirty (30) days of publication of such report.  In the event that EPA determines at any

time that the financial assurances provided by the Annual Report do not demonstrate Settling Defendant's ability to complete Phase 1, then Settling Defendant shall establish and maintain financial security in the amount needed to complete Phase 1, in one or more of the following forms:

      a.      A surety bond guaranteeing performance of the Work;

      b.      One or more irrevocable letters of credit equalling the total estimated cost of the Work;

      c.      A trust fund;

      d.      A guarantee to perform the Work by one or more subsidiaries, or by one or more unrelated corporations that have a substantial business relationship with the Settling Defendant;

      e.      A demonstration that the Settling Defendant satisfies the requirements of 40 C.F.R. Part 264.143(f).

Settling Defendant may invoke the dispute resolution procedures under Section XIX, below, to dispute an EPA determination under this Paragraph that Settling Defendant's Annual Report does not demonstrate Settling Defendant's financial ability to complete Phase 1.

      52.      In the event that Settling Defendant notifies EPA pursuant to subparagraph 15.c., above, that it will perform Phase 2, then within 21 days after such notification, Settling Defendant shall demonstrate its financial ability to complete the Work by submitting to EPA a copy of Settling Defendant's most recent Annual Report. Each year thereafter, until the completion of the Work, Settling Defendant shall submit its most recent Annual Report to EPA within thirty (30) days of publication of such report. In the event that EPA determines at any time that the financial assurances provided by the Annual Report do not demonstrate Settling Defendant's ability to complete the Work, then Settling Defendant shall establish and maintain financial security in the amount needed to complete the Work, in one or more of the forms listed in Paragraph 51, above. Settling Defendant may invoke the dispute resolution procedures under Section XIX, below, to dispute an EPA determination under this Paragraph that Settling Defendant's Annual Report does not demonstrate Settling Defendant's financial ability to complete the Work.

      53.      If the Settling Defendant seeks to demonstrate the ability to complete the Work through a guarantee by a third party pursuant to subparagraph 51.d. of this Consent Decree, Settling Defendant shall demonstrate that the guarantor satisfies the requirements of 40 C.F.R. Part 264.143(f). If Settling Defendant seeks to demonstrate its ability to complete the Work by means of the financial test or the corporate guarantee pursuant to subparagraph 51.d. or 51.e., it shall resubmit sworn statements conveying the information required by 40 C.F.R. Part 264.143(f) annually, on the anniversary of the Effective Date. In the event that EPA determines at any time that the financial assurances provided pursuant to this Section are inadequate, Settling Defendant shall, within 30 days of receipt of notice of EPA's determination, obtain and present to EPA for approval one of the other forms of financial assurance listed in Paragraph 51 of this Consent Decree. Settling Defendant may invoke the dispute resolution procedures under Section XIX,

below, to dispute an EPA determination under this Paragraph that Settling Defendant's financial assurances provided pursuant to this Section are inadequate.  Settling Defendant's inability to demonstrate financial ability to complete the Work shall not excuse performance of any activities required under this Consent Decree.

54.   If Settling Defendant can show that the estimated cost to complete the remaining Work has diminished below the amounts established pursuant to Paragraph 51 or Paragraph 52 (if applicable) above after entry of this Consent Decree, Settling Defendant may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, reduce the amount of the financial security provided under this Section to the estimated cost of the remaining work to be performed.  Settling Defendant shall submit a proposal for such reduction to EPA, in accordance with the requirements of this Section, and may reduce the amount of the security upon approval by EPA.  In the event of a dispute, Settling Defendant may reduce the amount of the security in accordance with the final administrative or judicial decision resolving the dispute.

55.   Settling Defendant may change the form of financial assurance provided under this Section at any time, upon notice to and approval by EPA, provided that the new form of assurance meets the requirements of this Section.  In the event of a dispute, Settling Defendant may change the form of the financial assurance only in accordance with the final administrative or judicial decision resolving the dispute.

## XIV. CERTIFICATION OF COMPLETION

56.   Completion of Construction of Phase 1

a.   Within seven days after Settling Defendant makes the preliminary determination that all Phase 1 Field Activities have been completed, Settling Defendant shall schedule with EPA and the State a Pre-Final Phase 1 Construction Completion Inspection.  For purposes of this Consent Decree, "Phase 1 Field Activities" means the dredging activities that occur during the first construction season of remedial dredging at the Work Area; the backfilling or capping (as appropriate) of the areas dredged during that season; the stabilization of shorelines in those areas; the processing and off-site shipment of all sediments removed during that season; the installation of habitat replacement/reconstruction measures (where required) in the areas dredged during that season; and the monitoring, pursuant to the Remedial Action Monitoring Plan, conducted during the period of the aforementioned activities; but it does not include preparation of the Phase 1 Evaluation Reports, the Peer Review, or OM&M of the Phase 1 areas.  For purposes of this Section XIV, "installation of habitat replacement/reconstruction measures" means the initial installation of active habitat replacement/reconstruction measures in the areas dredged during Phase 1 (including such measures that may initially be installed during the spring in the year immediately following the construction season in which Phase 1 dredging is performed), but does not include OM&M or adaptive management of the habitat replacement/reconstruction. The Pre-Final Phase 1 Construction Completion Inspection shall consist of a walk-through inspection of all on-land properties within the Work Area at which Phase 1 Field Activities were conducted, and an on-river inspection of the Phase 1 dredge areas.  The purpose of the inspection is to help determine whether the Phase 1 Field Activities were completed in accordance with this Consent Decree.

b.      If, after the Pre-Final Phase 1 Construction Completion Inspection, Settling Defendant still believes that the Phase 1 Field Activities are complete, then within 30 days of the inspection Settling Defendant shall submit to EPA, for review and approval, a Phase 1 Construction Report by a registered professional engineer licensed in New York State.  The report shall include a summary of all information demonstrating the proper completion of the Phase 1 Field Activities and shall request EPA's Certification of Completion of Phase 1 Field Activities. The report shall state that the Phase 1 Field Activities were completed in full satisfaction of the requirements of the Consent Decree, and shall contain the following statement, signed by a responsible corporate official of Settling Defendant or the Settling Defendant's Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information contained in or accompanying this submission is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing violations.

c.      If, after completion of the Pre-Final Phase 1 Construction Completion Inspection, or receipt and review of the Phase 1 Construction Report, EPA, after a reasonable opportunity for review and comment by the State and by the Federal Trustees for Natural Resources, determines that any of the Phase 1 Field Activities have not been completed in accordance with this Consent Decree, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the Phase 1 Field Activities, provided, however, that

> (1)     EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with, and would not materially expand, the scope of the remedy selected in the ROD or the scope of the work required by the SOW, the Approved Design Documents for Phase 1, or the Phase 1 Remedial Action Work Plan (provided that this item (1) does not affect any of the rights afforded to EPA elsewhere in this Consent Decree to require that changes be made to the SOW, the Approved Design Documents for Phase 1, or the Phase 1 Remedial Action Work Plan);

> (2)     Settling Defendant shall not be required by EPA's notification under this Paragraph to perform (i) dredging activities in any Certification Unit ("CU") (or portion thereof) for which EPA has issued, pursuant to Section 5.2 of the SOW, a CU Dredging Completion Approval, (ii) backfilling or capping activities in any CU (or portion thereof) for which EPA has issued a CU Backfill/Engineered Cap Completion Approval, or (iii) any additional remedial construction activities (including installation of habitat replacement/reconstruction measures) in any CU for which EPA has

issued a Final CU Construction Completion Certification; provided that EPA's issuance of any such approval or certification shall not relieve Settling Defendant of its obligations under this Consent Decree to perform operation, monitoring, maintenance and adaptive management activities at such Certification Unit, and further provided that nothing in this item (2) shall affect the reservations of rights at Paragraph 100 (United States' Pre-Certification Reservations), Paragraph 101 (United States' Post-Certification Reservations), or Paragraph 104 (General Reservations of Rights); and

(3)   Settling Defendant shall not be required under this Consent Decree to perform Phase 2 of the Remedial Action unless Settling Defendant notifies EPA, pursuant to subparagraph 15.c., above, that Settling Defendant will implement Phase 2 pursuant to this Consent Decree.

If EPA notifies Settling Defendant under this Paragraph that activities must be undertaken to complete the Phase 1 Field Activities, then EPA will set forth in such notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Defendant to submit such a schedule to EPA for review and approval. Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution). Within 15 days after completion of all such activities, Settling Defendant shall schedule with EPA and the State a Final Phase 1 Construction Completion Inspection of the locations where such activities were conducted. Such inspection shall be followed by further reporting or other activities, as determined appropriate by EPA, consistent with this subparagraph and subparagraph 56.b., above.

d.   If EPA concludes, based on the initial or any subsequent Phase 1 Construction Report and after a reasonable opportunity for review and comment by the State and by the Federal Trustees for Natural Resources, that the Phase 1 Field Activities have been completed in accordance with this Consent Decree, EPA will so certify in writing to Settling Defendant. This certification shall constitute the Certification of Completion of Phase 1 Field Activities for purposes of this Consent Decree including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiff). This certification shall not affect Settling Defendant's remaining obligations under this Consent Decree.

e.   EPA will endeavor to respond to Settling Defendant's request for a Certification of Completion of Phase 1 Field Activities within 180 days of EPA's receipt of such request, and in any event, will respond to such request no later than 365 days after EPA's receipt of the request.

57.   Completion of the Remedial Action.   If Settling Defendant notifies EPA, pursuant to subparagraph 15.c., above, that it will implement Phase 2 of the Remedial Action, then Settling Defendant shall comply with subparagraphs a. through c., below:

a.      Within 15 days after Settling Defendant makes the preliminary determination that the Remedial Action is complete, Settling Defendant shall schedule with EPA and the State an RA Completion Pre-Final Inspection.  The RA Completion Pre-Final  Inspection shall consist of a walk-through inspection of all on-land properties at which sediment processing/transfer operations, habitat restoration, and other remedial activities were conducted, and an on-river inspection of the dredge areas.  The purpose of the inspection is to help determine whether the Remedial Action has been completed in accordance with this Consent Decree.

b.      If, after the RA Completion Pre-Final Inspection, Settling Defendant still believes that the Remedial Action is complete, then within 90 days of the inspection, Settling Defendant shall submit to EPA, for review and approval, a Remedial Action Report by a registered professional engineer licensed in New York State.  The report shall request EPA's Certification of Completion of the Remedial Action, and shall include a summary of all information demonstrating the proper completion of the Remedial Action. The report shall state that the Remedial Action has been completed in full satisfaction of the requirements of the Consent Decree, and shall contain the following statement, signed by a responsible corporate official of Settling Defendant or the Settling Defendant's Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information contained in or accompanying this submission is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing violations.

c.      If, after completion of the RA Completion Pre-Final Inspection, or receipt and review of the Remedial Action Report, EPA, after a reasonable opportunity for review and comment by the State and the Federal Trustees for Natural Resources, determines that any portion of the Remedial Action has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the Remedial Action, provided, however, that

(1)      EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with, and would not materially expand, the scope of the remedy selected in the ROD or the scope of the work required by the SOW (as the SOW may be modified following the Phase 1 dredging), the Approved Design Documents (as such documents may be modified following the Phase 1 dredging), or the Remedial Action Work Plans (provided that this item (1) does not affect any of the rights afforded to EPA elsewhere in this Consent Decree to require that changes be made to the Remedial Action,  the SOW,

the Approved Design Documents, or the Remedial Action Work Plans); and

    (2)    Settling Defendant shall not be required by EPA's notification under this Paragraph to perform (i) dredging activities in any CU (or portion thereof) for which EPA has issued, pursuant to Section 5.2 of the SOW, a CU Dredging Completion Approval, (ii) backfilling or capping activities in any CU (or portion thereof) for which EPA has issued a CU Backfill/Engineered Cap Completion Approval, or (iii) any additional remedial construction activities (including installation of habitat replacement/reconstruction measures) in any CU for which EPA has issued a Final CU Construction Completion Certification; provided that EPA's issuance of any such approval or certification shall not relieve Settling Defendant of its obligations under this Consent Decree to perform operation, monitoring, maintenance and adaptive management activities at such Certification Unit, and further provided that nothing in this item (2) shall affect the reservations of rights at Paragraph 100 (United States' Pre-Certification Reservations), Paragraph 101 (United States' Post-Certification Reservations), or Paragraph 104 (General Reservations of Rights).

If EPA notifies Settling Defendant under this Paragraph that activities must be undertaken to complete the Remedial Action, then EPA will set forth in such notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendant to submit such a schedule to EPA for review and approval.  Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).  Within 15 days after completion of all such activities, Settling Defendant shall schedule with EPA and the State an RA Completion Final Inspection of the locations where such activities were conducted.  Such inspection shall be followed by further reporting or other activities, as determined appropriate by EPA, consistent with this subparagraph and subparagraph 57.b., above.

    d.    If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion of the Remedial Action and after a reasonable opportunity for review and comment by the State and by the Federal Trustees for Natural Resources, that the Remedial Action has been performed in accordance with this Consent Decree, EPA will so certify in writing to Settling Defendant.  This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiff).  Certification of Completion of the Remedial Action shall not affect Settling Defendant's remaining obligations under this Consent Decree.

    e.    EPA will endeavor to respond to Settling Defendant's request for a Certification of Completion of the Remedial Action within 180 days of EPA's receipt of such request, and in any event, will respond to such request no later than 365 days after EPA's receipt of the request.

58.   <u>Completion of the Work.</u>

a.      Within 30 days after Settling Defendant concludes that all of the Work (including OM&M) has been fully performed, Settling Defendant shall schedule and conduct a Pre-Certification Inspection of the Work, to be attended by Settling Defendant, EPA and the State. If, after the Pre-Certification Inspection, Settling Defendant still believes that the Work has been fully performed, then within 90 days of the inspection Settling Defendant shall submit to EPA, for review and approval, a Work Completion Report by a registered professional engineer licensed in New York State.  The report shall state that the Work has been completed in full satisfaction of the requirements of this Consent Decree.  The report shall include a summary of all information (including long-term monitoring data) demonstrating the proper completion of the Work.  The report shall contain the following statement, signed by a responsible corporate official of Settling Defendant or the Settling Defendant's Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information contained in or accompanying this submission is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing violations.

If, after completion of the Pre-Certification Inspection of the Work, or receipt and review of the Work Completion Report, EPA, after a reasonable opportunity for review and comment by the State and the Federal Trustees for Natural Resources, determines that any portion of the OM&M, or any other portion of the Work which was not previously the subject of a certification of completion issued by EPA, has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete such Work, provided, however, that

(1)      EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with, and would not materially expand, the scope of the remedy selected in the ROD or the scope of the work required by the SOW (as the SOW may be modified following the Phase 1 dredging), the Approved Design Documents (as such documents may be modified following the Phase 1 dredging), the Remedial Action Work Plans, or the OM&M Plans (provided that this item (1) does not affect any of the rights afforded to EPA elsewhere in this Consent Decree to require that changes be made to the Remedial Action, the SOW, the Approved Design Documents, the Remedial Action Work Plans, or the OM&M Plans); and

(2)      Settling Defendant shall not be required under this Consent Decree to perform Phase 2 of the Remedial Action unless Settling Defendant notifies

EPA, pursuant to subparagraph 15.c., above, that Settling Defendant will implement Phase 2 pursuant to this Consent Decree.

EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendant to submit a schedule to EPA for review and approval. Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution). Within 15 days after completion of all such activities, Settling Defendant shall schedule with EPA and the State a Final Inspection of the Work at the locations where such activities were conducted. Such inspection shall be followed by further reporting or other activities, as determined appropriate by EPA, consistent with this subparagraph.

   b.    If EPA concludes, based on the initial or any subsequent request for Certification of Completion of the Work by Settling Defendant and after a reasonable opportunity for review and comment by the State and by the Federal Trustees for Natural Resources, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendant in writing.

   c.    EPA will endeavor to respond to Settling Defendant's request for a Certification of Completion of the Work within 180 days of EPA's receipt of such request, and in any event, will respond to such request no later than 365 days after EPA's receipt of the request.

XV. EMERGENCY RESPONSE

   59.    In the event of any action or occurrence during Settling Defendant's performance of the Work which causes or threatens to cause a release of Waste Material at or from the Work Area that may present an immediate threat to public health or welfare or the environment, Settling Defendant shall, immediately upon obtaining knowledge of such action or occurrence, notify (a) EPA's Team Leader, Hudson River Team, Emergency and Remedial Response Division, EPA Region 2, (212) 637-3952 (or, in the event of the unavailability of the Team Leader, the EPA Project Coordinator or Alternate EPA Project Coordinator); (b) the NYSDEC Project Manager, Hudson River PCBs Superfund Site, at (518) 402-9676 (or, in the event of the unavailability of the NYSDEC Project Manager, the Chief of NYSDEC's Hudson River Unit at (518) 402-9770); and (c) the NYSDOH Bureau of Environmental Exposure Investigation at (518) 402-7850. In addition, in the event of any such action or occurrence that is related to activities undertaken by Settling Defendant or its contractors to perform the Work, Settling Defendant shall immediately take all appropriate action to prevent, abate, or minimize the release or threat of a release. Settling Defendant shall take such actions in consultation with EPA's Team Leader or the Team Leader's designee and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans and any other applicable plans or documents developed pursuant to the RD AOC or the SOW. In the event that Settling Defendant fails to take appropriate response action as required by this Paragraph, and EPA takes such action instead, Settling Defendant shall reimburse EPA for all costs of the response action not inconsistent with the NCP, pursuant to Section XVI (Payments for Response Costs).

44

60.     Subject to Section XXI (Covenants Not to Sue by Plaintiff), nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site.

## XVI. Payments for Response Costs

61.     Payments for Past Response Costs. Within 30 days of the Effective Date, Settling Defendant shall pay to EPA $26,000,000 in reimbursement of Past Response Costs, plus the Interest which accrues on such amount from the date of lodging of this Consent Decree to the date of Settling Defendant's payment under this Paragraph. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing USAO File Number _____, EPA Site/Spill ID Number 0284, and DOJ Case Number 90-11-2-529. Payment shall be made in accordance with instructions provided to the Settling Defendant by the Financial Litigation Unit of the United States Attorney's Office for the Northern District of New York following lodging of the Consent Decree. Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.

62.     Payments for Phase 1 RA Response Costs. Settling Defendant shall reimburse EPA for all Phase 1 RA Response Costs, up to $17,000,000. Any portion of Phase 1 RA Response Costs that exceeds $17,000,000 shall not be recoverable from Settling Defendant. The United States intends to send Settling Defendant annual (or more frequent) billings for Phase 1 RA Response Costs; however, the United States' failure to do so does not relieve Settling Defendant of its obligation to pay any bill, when issued.

63.     Payments for Phase 2 RA Response Costs. If Settling Defendant notifies EPA, pursuant to subparagraph 15.c. of this Consent Decree, that it will perform Phase 2 of the Remedial Action, then Settling Defendant shall reimburse EPA for Phase 2 RA Response Costs, as follows:

a.     For all such costs not exceeding $25,000,000, Settling Defendant shall pay 100% of such costs.

b.     For all such costs greater than $25,000,000 and not exceeding $35,000,000, Settling Defendant shall pay 75% of such costs.

Any portion of Phase 2 RA Response Costs that exceeds $35,000,000 shall not be recoverable from Settling Defendant. The United States intends to send Settling Defendant annual (or more frequent) billings for Phase 2 RA Response Costs; however, the United States' failure to do so does not relieve Settling Defendant of its obligation to pay any bill, when issued.

64.     Payments for Non-Capped Phase 1 Costs and Non-Capped Phase 2 Costs. Settling Defendant shall reimburse EPA for all Non-Capped Phase 1 Costs. If Settling Defendant notifies

EPA, pursuant to subparagraph 15.c. of this Consent Decree, that it will perform Phase 2 of the Remedial Action, then Settling Defendant shall also reimburse EPA for all Non-Capped Phase 2 Costs.   If the United States incurs Non-Capped Phase 1 Costs or Non-Capped Phase 2 Costs, it will send Settling Defendant one or more billings for such costs.

65.    <u>Payments for Post-Phase 2 Costs</u>.  If Settling Defendant notifies EPA, pursuant to subparagraph 15.c. of this Consent Decree, that it will perform Phase 2 of the Remedial Action, then Settling Defendant shall reimburse EPA for all Post-Phase 2 Costs up to $2,500,000.  The United States will send Settling Defendant periodic billings for such costs.

66.    Each bill issued by EPA under Paragraphs 62, 63, 64, or 65, above, will be accompanied by a brief narrative statement of the activities performed, and a report(s) from EPA's Superfund Cost Recovery Package Imaging and On-line System (SCORPIOS) (or a similar report) providing summary cost information regarding costs that are the subject of the bill.  EPA's SCORPIOS or similar reports will include the following items with respect to EPA intramural costs: (i) a listing of total labor costs by employee, including the hours charged per relevant pay period; (ii) the "action codes" or similar accounting codes that EPA used to assign labor hours to particular classes of activities; (iii) a statement of the indirect cost rate(s) applied and a listing of indirect costs; and (iv) a listing of travel costs for each traveling employee.  In addition, each such bill will be accompanied by copies of the types of documents listed in items (1) through (4), below, to the extent that at the time of the issuance of the bill, such documents exist with respect to some of the costs that are the subject of the bill, are available to EPA or USACE, and have not previously been provided to Settling Defendant.  In addition, confidential business information contained in any of the types of documents listed in items (1) through (4), below, shall only be released to Settling Defendant subject to the September 9, 2002 Agreement Regarding Confidentiality of Business Information executed between EPA and Settling Defendant, or other appropriate confidentiality agreement.

(1)    With respect to EPA contractor costs:

i.    the technical component(s) of each work assignment, technical directive document, technical instruction document, or other task order issued by EPA to the contractor for the work for which the costs were incurred, as well as any amendment(s) to such technical components;

ii.    any work plan or comparable document approved by EPA pertaining to the contractor work for which the costs were incurred, as well as any amendment(s) to such work plan or comparable document;

iii.    any periodic progress reports submitted by the contractor to EPA pertaining to the contractor work for which the costs were incurred; and

iv.    if the bill to Settling Defendant includes costs in excess of $100,000 for a particular EPA contractor: invoices or vouchers for

46

those contractor costs which indicate costs by cost type (*e.g.*, labor, travel, subcontractors, indirect costs, etc.) or by activity, and as to such invoices or vouchers, invoice approval forms or other documentation indicating approval by the EPA project manager or other responsible EPA employee.

(2)     With respect to costs paid by EPA pursuant to an interagency agreement with USACE:

  i.      the technical component(s) of each work assignment, technical directive document, technical instruction document, or other task order issued by EPA to USACE (or by USACE to a contractor under direct contract to USACE) for the work for which the costs were incurred, as well as any amendment(s) to such technical components;

  ii.     any work plan or comparable document approved by USACE pertaining to work by a contractor under direct contract to USACE for work performed pursuant to the interagency agreement and encompassed by the bill, as well as any amendment(s) to such work plan or comparable document;

  iii.    any periodic progress reports submitted by USACE to EPA (or to USACE by a contractor under direct contract to USACE) pertaining to work performed pursuant to the interagency agreement and encompassed by the bill;

  iv.     invoices or vouchers submitted to USACE by its prime contractors and which indicate costs by cost type (*e.g.*, labor, travel, subcontractors, indirect costs, etc.) or by activity, and as to such invoices or vouchers, invoice approval forms or other documentation indicating approval by the USACE project manager or other responsible USACE employee; and

  v.      invoices that are submitted to EPA pertaining to work performed by USACE.

(3)     If the costs encompassed by a bill issued by EPA to Settling Defendant under this Paragraph include more than $100,000 in costs paid to any subcontractor of an EPA or USACE contractor, then as to such subcontractor costs, a copy of documentation comparable to the types of documentation listed in subparagraphs (1) and (2), above;

(4)     With respect to costs paid to the State: progress reports and Financial Status Reports prepared by the State; and

(5)     If the costs encompassed by a bill issued by EPA to Settling Defendant under this Paragraph include miscellaneous or other costs outside the costs

47

described in subparagraphs (1) through (4), above, then as to such
miscellaneous or other costs, a description of or documents that describe
the nature of the expenditure.

No additional documentation beyond that required above in this Paragraph shall be required to
establish the amounts encompassed by a specific bill.

67.     Settling Defendant shall make all payments of Phase 1 RA Response Costs, Phase
2 RA Response Costs, Non-Capped Phase 1 Costs, Non-Capped Phase 2 Costs, and Post-Phase 2
Costs within 60 days of Settling Defendant's receipt of each bill for such costs and the
aforementioned documentation (if such documents exist with respect to some of the costs that are
the subject of the bill, are available to either EPA or USACE, and have not previously been
provided to Settling Defendant), except as otherwise provided in Paragraph 68.  Settling
Defendant shall make these payments by EFT, remitted to EPA's account at Mellon Bank,
Pittsburgh, Pennsylvania.  To make these payments, Settling Defendant shall provide the
following information to its bank:

.       Amount of payment
.       Title of Mellon Bank account to receive the payment: **EPA**
.       Account code for Mellon Bank account receiving the payment: **9108544**
.       Mellon Bank ABA Routing Number: **043000261**
.       Name of Settling Defendant: **General Electric Company**
.       Case number: (Civil Action Number of this Consent Decree)
.       Site/spill identifier: **02-84**

Along with this information, Settling Defendant shall instruct its bank to remit payment in the
required amount via EFT to EPA's account with Mellon Bank.

68.     Within forty (40) days of receipt of a bill under Paragraphs 62, 63, 64, or 65,
above (and associated supporting documentation to the extent required by Paragraph 66), Settling
Defendant may invoke the dispute resolution procedures of Section XIX of this Consent Decree
with respect to the bill. However, Settling Defendant agrees to limit any disputes concerning such
costs to accounting errors and/or the inclusion of costs which are  inconsistent with the NCP or
are outside the definition, in Paragraph 4, above, of  Phase 1 RA Response Costs, Phase 2 RA
Response Costs, Non-Capped Phase 1 Costs, Non-Capped Phase 2 Costs, or Post-Phase 2 Costs
(as the case may be).  For purposes of this Paragraph, Settling Defendant shall not claim that any
of the following constitutes an accounting error: (i) EPA's methodology for calculating indirect
costs, as set forth at 65 Fed. Reg. 35341-35345 (June 2, 2000); (ii) DOJ's methodology for
calculating indirect costs; (iii) any actual or provisional indirect cost rates which are set for EPA
Region 2 by EPA's Office of the Comptroller (or similar office) based on the methodology
referred to in clause (i); (iv) EPA's methodology for calculating contractor annual allocation
costs; and (v) EPA's use of a provisional annual allocation rate for EPA contractor costs if no
final annual allocation rate has been established for a given year and contractor at the time that
EPA issues a bill for such contractor costs.  Settling Defendant's invocation of dispute resolution
shall be made in writing and must be sent to the United States pursuant to Section XXVII
(Notices and Submissions).  Any dispute regarding EPA's bill shall specifically identify the

contested costs and the basis for objection.  In the event of a dispute, the Settling Defendant shall, within 60 days of its receipt of the bill, pay all uncontested billed costs to the United States in accordance with the payment procedures described in Paragraph 67.  Settling Defendant bears the burden of establishing an accounting error or the inclusion of costs which are inconsistent with the NCP or are outside the definition of Phase 1 RA Response Costs, Phase 2 RA Response Costs, Non-Capped Phase 1 Costs, Non-Capped Phase 2 Costs, or Post-Phase 2 Costs (as the case may be).  If the United States prevails in the dispute, within 15 days of the resolution of the dispute, Settling Defendant shall pay the sums due (with accrued Interest) to the United States in accordance with the payment procedures described in Paragraph 67.  If Settling Defendant prevails concerning any aspect of the contested costs, Settling Defendant shall pay that portion of the costs (plus associated accrued Interest) for which it did not prevail to the United States.  The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendant's obligation to reimburse the United States for its Phase 1 RA Response Costs, Phase 2 RA Response Costs, Non-Capped Phase 1 Costs, Non-Capped Phase 2 Costs, and Post-Phase 2 Costs.

69.     At the time of each payment made by Settling Defendant to the United States under this Section, Settling Defendant shall send notice to the United States that such payment has been made.  Such notice shall reference the date of the EFT, the payment amount, the Site name, the civil action number of this case, and Settling Defendant's name and address, and shall be sent to the United States in accordance with Section XXVII (Notices and Submissions), and to:

Chief, Financial Management Branch
U.S. Environmental Protection Agency, Region 2
290 Broadway, 29th Floor
New York, NY 10007-1866

70.     All amounts paid by Settling Defendant to the United States pursuant to this Section shall be deposited in the Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

71.     In the event that any of the payments required by Paragraphs 67 and 68 are not made by the due date for such payments, Settling Defendant shall pay Interest on the unpaid balance.  Such Interest shall begin to accrue on the first day that the respective payment is overdue, and shall accrue through the date of the Settling Defendant's payment.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to the United States by virtue of Settling Defendant's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Section XX.  Settling Defendant shall make all payments required by this Paragraph in accordance with the payment procedures described in Paragraph 67.

72.     Fish Consumption Advisories and Fishing Restrictions.  In order to support the State's implementation of appropriate Fish Consumption Advisories and Fishing Restrictions, as

required by the ROD, Settling Defendant shall make the following payments to Health Research, Inc. of Rensselaer, New York ("HRI"), pursuant to the terms of an agreement which has been or will be entered into between Settling Defendant and HRI:

a.      Settling Defendant shall pay $3,000,000 to HRI within 60 days of entry of this Consent Decree.

b.      If Settling Defendant notifies EPA, pursuant to subparagraph 15.c., above, that it will implement Phase 2 pursuant to this Consent Decree, then Settling Defendant shall, within 60 days of the Phase 2 Election Date, pay an additional $1,000,000 to HRI.

XVII.   INDEMNIFICATION AND INSURANCE

73.     Settling Defendant's Indemnification of the United States.

a.      The United States does not assume any liability by entering into this Consent Decree or by virtue of any designation of Settling Defendant as EPA's authorized representative under Section 104(e) of CERCLA.  Settling Defendant shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendant as EPA's authorized representative under Section 104(e) of CERCLA.  Further, the Settling Defendant agrees to pay the United States all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States  based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree.  The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities pursuant to this Consent Decree.  Neither the Settling Defendant nor any such contractor shall be considered an agent of the United States.

b.      The United States shall give Settling Defendant notice of any claim for which the United States plans to seek indemnification pursuant to this Paragraph 73 and/or Paragraph 74, below.  Prior to settling such claim, the United States shall consult with Settling Defendant, providing information to Settling Defendant regarding the amount of the proposed settlement and the reasons for why the United States believes that the proposed settlement is reasonable.

74.     Settling Defendant waives all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States, arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, Settling Defendant shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling

Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

75.     No later than 15 days before commencing any Work, Settling Defendant shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Work pursuant to subparagraph 58.b of Section XIV (Certification of Completion), comprehensive general liability insurance with limits of 10 million dollars, combined single limit, and automobile liability insurance with limits of 10 million dollars, combined single limit, naming the United States as an additional insured.  In addition, for the duration of this Consent Decree, Settling Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this Consent Decree.  Prior to commencement of the Work under this Consent Decree, Settling Defendant shall provide to EPA certificates of such insurance and a copy of each insurance policy.  In addition, upon request from the State, Settling Defendant shall provide the State with copies of certificates of such insurance.  Settling Defendant shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date.  If Settling Defendant demonstrates by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendant need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVIII.  Force Majeure

76.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendant's best efforts to fulfill the obligation.  For purposes of this Section, the rail carriers selected by Settling Defendant to transport dredged material from the Work Area and the off-site disposal facilities selected by Settling Defendant for the disposal of such material shall not be considered to be Settling Defendant's contractors.  The requirement that the Settling Defendant exercises "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible.  "Force majeure" does not include financial inability to complete the Work.

77.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Defendant shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Leader of the Hudson River Team, Emergency and Remedial Response Division, EPA Region 2, at (212) 637-3952, within 48 hours of when Settling Defendant first knew that the event might cause a delay.  Within 5 days thereafter, Settling Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the

anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Defendant shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant, any entity controlled by Settling Defendant, or Settling Defendant's contractors knew or should have known.

78.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendant in writing of its decision. If EPA agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

79.     If the Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of Paragraphs 76 and 77, above. If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this Consent Decree identified to EPA and, if applicable, the Court.

## XIX. DISPUTE RESOLUTION

80.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendant that have not been disputed in accordance with this Section.

81.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the United States and Settling Defendant. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the United States and Settling

Defendant.  The dispute shall be considered to have arisen when Settling Defendant sends the United States a written Notice of Dispute.

82.   Statements of Position.

a.   In the event that the United States and Settling Defendant cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 10 days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendant.  The Statement of Position shall specify the Settling Defendant's position as to whether formal dispute resolution should proceed under Paragraph 83 or Paragraph 84.

b.   Within 14 days after receipt of Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.  EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 83 or 84.  Within 14 days after receipt of EPA's Statement of Position, Settling Defendant may submit a Reply.

c.   If there is disagreement between EPA and the Settling Defendant as to whether dispute resolution should proceed under Paragraph 83 or 84, the parties to the dispute shall follow the procedures set forth in the Paragraph determined by EPA to be applicable.  However, if the Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 83 and 84.

83.   Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree.  Nothing in this Consent Decree, however, shall be construed to allow any dispute by Settling Defendant regarding the validity or appropriateness of (a) the ROD's provisions; (b) the RA Performance Standards; (c) any plan, report or other document which was finalized under the RD AOC prior to the effective date of this Consent Decree, or under the Sampling AOC; (d) EPA's decision regarding the location(s) for the Sediment Processing/Transfer Facility(ies) to be used for the Remedial Action; (e) EPA's decision whether, or how, to incorporate into the EPA Phase 1 Evaluation Report any of Settling Defendant's requested changes and/or additions to that report; (f) EPA's choice of the final charge questions under subparagraph 14.e., above; (g) EPA's decision pursuant to subparagraph 15.b., above, regarding changes, if any, to the Phase 1 Engineering Performance Standards, the Phase 1 Quality of Life Performance Standards, the SOW or the scope of Phase 2; (h) EPA's choice of the Peer Review Selector pursuant to subparagraph 14.c., above; or (i) any EPA determination pursuant to Paragraph 21, above

(Evaluation of Benefits of Remedy); provided, however, that in any dispute that is allowed under this Consent Decree, Settling Defendant may dispute EPA's *interpretation* of the items listed in clauses (a), (b), (c), (f) and (g), above.   A dispute regarding such an EPA interpretation shall be resolved under the procedures set forth in this Paragraph 83.

   a.      An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

   b.      The Director of the Emergency and Remedial Response Division (the "ERRD Director"), EPA Region 2, will issue a final administrative decision resolving the dispute based on the administrative record described in subparagraph 83.a.  This decision shall be binding upon the Settling Defendant, subject only to the right to seek judicial review pursuant to subparagraph 83.c. and d.

   c.      Any administrative decision made by EPA pursuant to subparagraph 83.b. shall be reviewable by this Court, provided that, within 5 days of Settling Defendant's receipt of EPA's decision, Settling Defendant shall notify the United States, in writing, if it intends to file a motion for judicial review of EPA's decision, and of the issues that Settling Defendant will ask the Court to review.  Settling Defendant's motion shall be filed with the Court and served on the United States within 14 days of Settling Defendant's notice to EPA of its intent to file a motion for judicial review.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The United States may file a response to Settling Defendant's motion within 20 days of receipt of Settling Defendant's motion, and Settling Defendant may file a reply within 7 days of receipt of the United States' response.

   d.      In proceedings on any dispute governed by this Paragraph, Settling Defendant shall have the burden of demonstrating that the decision of the ERRD Director is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to subparagraph 83.a.  Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court.

   84.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of law, shall be governed by this Paragraph.

   a.       Following receipt of Settling Defendant's Statement of Position submitted pursuant to Paragraph 82, the ERRD Director will notify Settling Defendant, in writing, of EPA's position on the issue in dispute.  The ERRD Director's statement of EPA's position shall be binding on Settling Defendant, subject only to the right to seek judicial review, as follows: within 5 days of Settling Defendant's receipt of the ERRD Director's statement of EPA's position, Settling Defendant shall notify the United States, in writing, if it intends to file a motion for judicial review of EPA's position, and of the issues that Settling Defendant will ask the Court to

54

review.  Settling Defendant's motion shall be filed with the Court and served upon the United States within 14 days of Settling Defendant's notice to EPA of its intent to file a motion for judicial review.  The motion shall set forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the time period within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States may file a response to Settling Defendant's motion within 20 days of receipt of Settling Defendant's motion, and Settling Defendant may file a reply within 7 days of receipt of the United States' response.

b.      Notwithstanding Paragraph R of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.  Such dispute(s) shall be decided by the Court, giving such deference, if any, to EPA's determination(s) as the Court deems appropriate thereunder.  The Court may determine what evidence, if any, to admit with respect to such disputes.

85.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendant under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 94.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that the Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

86.     a.      Notwithstanding any other provision of this Consent Decree, Settling Defendant may not invoke the dispute resolution procedures of this Consent Decree more than once regarding the same issue.  In addition, Settling Defendant may not invoke the dispute resolution procedures of this Consent Decree with respect to an issue for which Settling Defendant previously invoked the dispute resolution procedures of the Sampling AOC or the RD AOC.  Applicable principles of *res judicata* and collateral estoppel shall govern the determination of whether Settling Defendant is attempting to invoke the dispute resolution procedures of this Consent Decree with respect to an issue that is the same as an issue for which Settling Defendant previously invoked the dispute resolution procedures of this Consent Decree, the Sampling AOC or the RD AOC.  For purposes of *res judicata* and collateral estoppel, as provided above, final resolution with respect to such an issue consists of any of the following:  (i) an agreement between EPA and Settling Defendant; (ii) a final decision by the ERRD Director under subparagraph 83.b. or a statement of EPA's position by the ERRD Director under subparagraph 84.a. of this Consent Decree (provided that Settling Defendant does not seek judicial review of such final decision or the dispute in accordance with the requirements of this Consent Decree); (iii) a final decision by the ERRD Director or the Regional Administrator under the dispute resolution provisions of the Sampling AOC or the RD AOC; or (iv) a decision by the Court.

b.      Notwithstanding subparagraph a, above, in the event that, without Settling Defendant's agreement, EPA modifies or directs Settling Defendant to modify the resolution of any disputed issue that was resolved by agreement of the parties or by decision of the Regional

Administrator or the ERRD Director, Settling Defendant may invoke dispute resolution under this Consent Decree with respect to that modification.

## XX. STIPULATED PENALTIES

87.     Settling Defendant shall be liable to the United States for stipulated penalties in the amounts set forth in Paragraphs 88 and 89 for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by Settling Defendant shall include performance and completion of the activities under this Consent Decree in accordance with all applicable requirements of law, this Consent Decree, and any plans or other documents approved by EPA pursuant to this Consent Decree, and within the specified time schedules established by and approved under, or otherwise enforceable under, this Consent Decree.

88.     Stipulated Penalty Amounts - First Tier.

a.     The following stipulated penalties shall accrue per violation per day for any noncompliance with a requirement identified in subparagraph 88.b.:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 2,500 | 1st through 14th day |
| $ 5,000 | 15th through 30th day |
| $ 10,000 | 31st day and beyond |

b.     Compliance Milestones - First Tier.

(1)     Timely submission and, if necessary, revision and resubmission, in accordance with the requirements of Section XI, of the Remedial Action Work Plans, and any other submittal required under the approved Remedial Action Work Plans or the SOW;

(2)     Implementation of the Remedial Action and OM&M in accordance with this Consent Decree, including, but not limited to, the SOW and all work plans that are approved pursuant to this Consent Decree;

(3)     Access and Institutional Control requirements set forth in Section IX;

(4)     Emergency response requirements set forth in Section XV;

(5)     Modifications of the SOW or related work plans pursuant to Paragraph 20, and implementation of the work called for by such modifications in accordance with the modified SOW or work plan; and

(6)     Performance of studies and investigations pursuant to Section VII.

89.   <u>Stipulated Penalty Amounts - Second Tier</u>

a.   The following stipulated penalties shall accrue per violation per day for any noncompliance with a requirement identified in subparagraph 89.b.:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,250 | 1st through 14th day |
| $ 2,500 | 15th through 30th day |
| $ 5,000 | 31st day and beyond |

b.   <u>Compliance Milestones - Second Tier</u>

(1)   Timely submission of the name of the Project Coordinator pursuant to Section XII;

(2)   Certification of Completion requirements set forth in Section XIV;

(3)   Timely notification regarding any delay or anticipated delay, consistent with Paragraph 77;

(4)   Indemnification and insurance requirements set forth in Section XVII;

(5)   Quality Assurance, sampling, data analysis, and other requirements set forth in Section VIII;

(6)   Reporting requirements as set forth in Section X;

(7)   Financial Assurance requirements pursuant to Section XIII;

(8)   Timely submission of written notification of any off-site shipment of Waste Material from the Work Area to an off-site waste management facility pursuant to subparagraph 23.a.;

(9)   Reimbursement of response costs (including interest, if applicable) pursuant to Section XVI;

(10)   Retention of Records pursuant to Section XXVI;

(11)   Submission of documents and other information in accordance with Section XXV; and

(12)   any other requirement of this Consent Decree, other than those referred to in subparagraphs 88.b. and 89.b.

90.     In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 105 of Section XXI (Covenants Not to Sue by Plaintiff), Settling Defendant shall be liable for a stipulated penalty as follows:

a.      If EPA assumes performance of a portion or all of Phase 1, Settling Defendant shall be liable for a stipulated penalty in the amount of $1,000,000.

b.      If Settling Defendant notifies EPA pursuant to subparagraph 15.c that it will implement Phase 2 pursuant to this Consent Decree and EPA subsequently assumes performance of a portion or all of Phase 2, then Settling Defendant shall be liable for a stipulated penalty in the amount of $1,000,000 for each scheduled remaining year of Phase 2, including the year in which EPA assumes performance of the Work (if EPA does so prior to the end of that dredging season), up to a maximum of $6,000,000.

91.     a.      All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  For this purpose, if under Section XI (EPA Approval of Plans and Other Submissions) EPA modifies a submission of Settling Defendant to cure deficiencies in such submission, and notifies Settling Defendant that, with such modifications, the document is approved, then the date of that notification shall be deemed the date of correction of the noncompliance.  However, stipulated penalties shall not accrue:  (1) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendant of any deficiency or modifies the submission; (2) with respect to a decision by the ERRD Director under subparagraph 83.b. of Section XIX (Dispute Resolution), or a statement of EPA's position by the ERRD Director under subparagraph 84.a., during the period, if any, beginning on the 21st day after the date that Settling Defendant's reply to EPA's Statement of Position is received until the date that the Director issues a final decision or statement of EPA's position regarding such dispute; (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute; or (4) if EPA has not notified Settling Defendant of any deficiency, during the period, if any, beginning on the 181st day after the date on which the violation occurs until the date that EPA notifies Settling Defendant of such violation.  Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

b.      Following EPA's determination that Settling Defendant has failed to comply with a requirement of this Consent Decree, EPA may give Settling Defendant written notification of the same and describe the noncompliance.  EPA may send the Settling Defendant a written demand for the payment of the penalties.  However, penalties shall accrue as provided in subparagraph 91.a. regardless of whether EPA has notified the Settling Defendant of a violation.

92.     All penalties accruing under this Section shall be due and payable to the United States within 30 days of the Settling Defendant's receipt from EPA of a demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section

XIX (Dispute Resolution). All payments to the United States under this Section shall be made by EFT consistent with the payment procedures in subparagraph 67, above.

93.     The payment of penalties shall not alter in any way Settling Defendant's obligation to complete the performance of the Work required under this Consent Decree.

94.     Penalties shall continue to accrue as provided in subparagraph 91.a., above, during any dispute resolution period, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 15 days of the agreement or the receipt of EPA's decision or order;

b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendant shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of the Court's decision or order, except as provided in subparagraph c., below;

c.     If the District Court's decision is appealed by any Party, then within fifteen (15) days of the final decision by the Court of Appeals, Settling Defendant shall pay to EPA all accrued penalties determined by the District Court or the Court of Appeals, as the case may be, to be owing to the United States, plus, to the extent that the District Court had upheld the penalties, accrued Interest on such penalties running from a date sixty (60) days after the date of the District Court's decision or order until the date of payment.

95.     <u>Failure to Pay Stipulated Penalties</u>. If Settling Defendant fails to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as interest. Settling Defendant shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 92.

96.     Except as provided in Section XXI (Covenants Not to Sue by Plaintiff), nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendant's violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree. In the case of such a willful violation, the amount of any civil penalties sought pursuant to Section 122(l) of CERCLA shall be reduced by the amount of any stipulated penalty(ies) paid by Settling Defendant for the same violation.

97.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.  Covenants Not to Sue by Plaintiff

98.     In consideration of the actions that will be performed and the payments that will be made by the Settling Defendant under the terms of the Consent Decree, and except as specifically provided in Paragraphs 100, 101, and 104, below, the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and/or 107(a) of CERCLA and/or Section 7003 of RCRA (and EPA and USACE covenant not to sue or to take administrative action against Settling Defendant under any other statute or legal authority pursuant to which EPA or USACE could obtain relief comparable to that which could be obtained under Sections 106 and/or 107(a) of CERCLA and/or Section 7003 of RCRA):

a.       for performance of the Work;

b.       for recovery of Past Response Costs, Phase 1 RA Response Costs and Non-Capped Phase 1 Costs and, if Settling Defendant notifies EPA, pursuant to subparagraph 15.c., above, that it will implement Phase 2 pursuant to this Consent Decree, for recovery of Phase 2 RA Response Costs, Non-Capped Phase 2 Costs, and Post-Phase 2 Costs;

c.       for the performance of, or payment for, additional response actions in connection with the specific locations in the Upper Hudson River that are dredged in Phase 1 of the Remedial Action;

d.       to require Settling Defendant to perform any dredging or construction for Phase 2 of the Remedial Action (other than any such activities required elsewhere in this Consent Decree) during the period up to and including the earlier of (i) the date which is the applicable deadline under subparagraph 15.c, above, for Settling Defendant to notify EPA as to whether Settling Defendant will implement Phase 2 pursuant to this Consent Decree, and (ii) the date when Settling Defendant actually provides that notification to EPA;

e.       for administrative or judicial injunctive-type relief or reimbursement of response costs with respect to the Existing Contamination, if any, at the Sediment Processing/Transfer Facility Property(ies);

f.       for administrative or judicial injunctive-type relief with respect to PCB contamination in the Upper Hudson River, or for reimbursement of response costs in connection with the Upper Hudson River, if Settling Defendant notifies EPA, pursuant to subparagraph 15.c, above, that Settling Defendant will implement Phase 2 pursuant to this Consent Decree;

g.       for recovery of costs paid by Settling Defendant to HRI pursuant to subparagraph 72.a., above, and for any costs that are incurred by EPA during Phase 1 with respect to improving communication and public understanding of fish advisories related to PCBs in the Hudson River, including investigating why some anglers/consumers do not follow those fish advisories; posting advisory signs; and communicating information to the public regarding those advisories; and

h.       if Settling Defendant notifies EPA, pursuant to subparagraph 15.c., above, that it will implement Phase 2 pursuant to the Consent Decree, for recovery of costs paid by Settling Defendant to HRI pursuant to subparagraph 72.b., above, and for any costs that are incurred by EPA with respect to improving communication and public understanding of fish advisories

related to PCBs in the Hudson River, including investigating why some anglers/consumers do not follow those fish advisories; posting advisory signs; and communicating information to the public regarding those advisories.

99.     <u>Timing of Covenants</u>.  Except with respect to future liability as set forth in subparagraphs 99.a. and 99.b., below, and except with respect to Fish Consumption Advisories and Fishing Restrictions as set forth in subparagraphs 99.c. and 99.d., below, these covenants not to sue shall take effect upon the later of (i) the effective date of this Consent Decree, and (ii) receipt by EPA of the payment required by Paragraph 61 of Section XVI (Payments for Response Costs).

a.     With respect to future liability relating to Phase 1 of the Remedial Action, the covenant not to sue in subparagraph 98.c. shall take effect upon EPA's Certification of Completion of Phase 1 Field Activities pursuant to Paragraph 56 of Section XIV (Certification of Completion).

b.     With respect to future liability relating to Phase 2 of the Remedial Action and the Upper Hudson River, the covenant not to sue in subparagraph 98.f. shall take effect upon EPA's Certification of Completion of the Remedial Action pursuant to Paragraph 57 of Section XIV (Certification of Completion).

c.     The covenant not to sue set forth in subparagraph 98.g., above, shall take effect upon receipt by HRI of the payment required by subparagraph 72.a., above.

d.     The covenant not to sue set forth in subparagraph 98.h, above, shall take effect upon receipt by HRI of the payment pursuant to subparagraph 72.b, above.

e.     These covenants not to sue are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree.  These covenants not to sue extend only to the Settling Defendant and do not extend to any other person.

100.     <u>United States' Pre-Certification Reservations.</u>

a.     Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order, seeking to compel Settling Defendant to perform further response actions in connection with the specific locations in the Upper Hudson River that are dredged in Phase 1 of the Remedial Action, or to reimburse the United States for additional costs of response relating to such areas, if, prior to the Certification of Completion of Phase 1 Field Activities:

(1)     conditions in such areas, previously unknown to EPA, are discovered, or information, previously unknown to EPA, is received, in whole or part; and

(2)     EPA determines that these previously unknown conditions or information, together with any other relevant information, indicates that the Work

undertaken or to be undertaken in those areas is not protective of human health or the environment;

provided that such further response actions address or respond to EPA's determination that the Work undertaken or to be undertaken in such areas is not protective of human health or the environment.

b.      Notwithstanding any other provision of this Consent Decree, if Settling Defendant notifies EPA pursuant to subparagraph 15.c., above, that it will perform Phase 2 of the Remedial Action, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order, seeking to compel Settling Defendant to perform further response actions relating to the Upper Hudson River, or to reimburse the United States for additional costs of response relating to the Upper Hudson River, if, prior to the Certification of Completion of the Remedial Action:

(1)      conditions at the Upper Hudson River, previously unknown to EPA, are discovered, or information, previously unknown to EPA, is received, in whole or part; and

(2)      EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment;

provided that such further response actions address or respond to EPA's determination that the Remedial Action is not protective of human health or the environment.

101.   United States' Post-Certification Reservations.

a.      Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order, seeking to compel Settling Defendant to perform further response actions in connection with the specific locations in the Upper Hudson River that are dredged in Phase 1 of the Remedial Action, or to reimburse the United States for additional costs of response relating to such areas, if, subsequent to the Certification of Completion of Phase 1 Field Activities:

(1)      conditions in such areas, previously unknown to EPA, are discovered, or information, previously unknown to EPA, is received, in whole or part; and

(2)      EPA determines that these previously unknown conditions or information, together with any other relevant information, indicates that the Work undertaken or to be undertaken in such areas is not protective of human health or the environment;

provided that such further response actions address or respond to EPA's determination that the Work undertaken or to be undertaken in such areas is not protective of human health or the environment.

b.      Notwithstanding any other provision of this Consent Decree, if Settling Defendant notifies EPA pursuant to subparagraph 15.c, above, that it will perform Phase 2 of the Remedial Action, the United States reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order, seeking to compel Settling Defendant to perform further response actions relating to the Upper Hudson River, or to reimburse the United States for additional costs of response relating to the Upper Hudson River, if, subsequent to the Certification of Completion of the Remedial Action:

      (1)      conditions at the Upper Hudson River, previously unknown to EPA, are discovered, or information, previously unknown to EPA, is received; and

      (2)      EPA determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment;

provided that such further response actions address or respond to EPA's determination that the Remedial Action is not protective of human health or the environment.

102.    a.      For purposes of Paragraph 100, the information and the conditions known to EPA shall include that information and those conditions known to EPA as of the date of lodging of this Consent Decree and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the documents issued by EPA with respect to the Site between the issuance of the ROD and the date of lodging of this Consent Decree, any information received by EPA pursuant to the requirements of the Sampling AOC or RD AOC prior to the date of lodging of this Consent Decree, any data regarding PCB levels in the water column, sediments, or fish at the Site generated by EPA or that EPA received from any person prior to the date of lodging of this Consent Decree, and any data or information submitted by Settling Defendant to EPA Region 2, in writing, with respect to the Site prior to the date of lodging of this Consent Decree.

      b.      For purposes of subparagraph 101.a., the information and the conditions known to EPA shall include only that information and those conditions identified in subparagraph 102.a., above, and that information and those conditions known to EPA as of the date of Certification of Completion of Phase 1 Field Activities and set forth in the post-ROD administrative record, the documents issued by EPA with respect to the Site between the issuance of the ROD and the date of Certification of Completion of Phase 1 Field Activities, any information received by EPA pursuant to the requirements of the Sampling AOC, RD AOC or this Consent Decree prior to Certification of Completion of Phase 1 Field Activities, and any data regarding PCB levels in the water column, sediments, or fish at the Site generated by EPA or that EPA received from any person prior to the date of the Certification of Completion of Phase 1 Field Activities.

c.      For purposes of subparagraph 101.b., the information and the conditions known to EPA shall include only that information and those conditions identified in subparagraphs 102.a. and 102.b., above, and that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the post-ROD administrative record, the documents issued by EPA with respect to the Site between the issuance of the ROD and the date of Certification of Completion of the Remedial Action, any information received by EPA pursuant to the requirements of the Sampling AOC, RD AOC or this Consent Decree prior to Certification of Completion of the Remedial Action, and any data regarding PCB levels in water column, sediments, or fish at the Site generated by EPA or that EPA received from any person prior to the date of the Certification of Completion of the Remedial Action.

103.    With respect to any claim or cause of action asserted by the United States against Settling Defendant with respect to the Sediment Processing/Transfer Facility Property(ies), Settling Defendant shall bear the burden of proving that the claim or cause of action, or any part thereof, is attributable solely to Existing Contamination.

104.    General Reservations of Rights.  The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within the United States' covenants not to sue.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant with respect to:

a.      claims based on a failure by Settling Defendant to meet a requirement of this Consent Decree;

b.      claims based on a failure by Settling Defendant to meet a requirement of the consent decree entered in United States v. General Electric Company, Inc., Civ. No. 90-CV-575 (N.D.N.Y.);

c.      claims based on a failure by Settling Defendant to meet a requirement of an administrative order issued by EPA prior to the effective date of this Consent Decree;

d.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Upper Hudson Work Area;

e.      liability based upon Settling Defendant's ownership or operation of the Site, or upon Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Defendant;

f.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

g.      liability for response actions to address contamination in the Hudson River floodplain (except to the extent that such response actions are part of the Work);

h.      criminal liability;

i.      liability for violations of federal or state law which occur during or after implementation of the Remedial Action;

j.      liability for the implementation of Phase 2 and any activities required to monitor and maintain the effectiveness of Phase 2, unless Settling Defendant provides written notice to EPA and the State, by the applicable deadline in subparagraph 15.c., above, stating unequivocally that Settling Defendant will implement, pursuant to this Consent Decree, Phase 2;

k.      liability for the Lower Hudson River;

l.      liability for costs that the United States will incur related to the Site but which are not within the definitions of Phase 1 RA Response Costs, Phase 2 RA Response Costs, Non-Capped Phase 1 Costs, Non-Capped Phase 2 Costs, and Post-Phase 2 Costs in Paragraph 4, above;

m.      liability that results from past or future releases of hazardous substances, pollutants or contaminants, at or from one or more of the Sediment Processing/Transfer Facility Property(ies), and that is or was caused or contributed to by Settling Defendant or its contractors, subcontractors, or representatives;

n.      liability resulting from exacerbation by Settling Defendant, or its contractors, subcontractors, or representatives, of any Existing Contamination at the Sediment Processing/Transfer Facility Property(ies);

o.      in the event that Settling Defendant has notified EPA that it will implement Phase 2 of the Remedial Action pursuant to this Consent Decree, liability for the performance of such studies and investigations as EPA may require in connection with the periodic reviews prescribed by Section 121(c) of CERCLA, beginning with the third such periodic review following the completion of the Remedial Action; and

p.      liability for Reserved OM&M Costs.

105.     <u>Work Takeover</u>. In the event EPA determines that Settling Defendant (1) has ceased implementation of any portion of the Work, other than due to a force majeure event under the provisions of Section XVIII (Force Majeure), (2) is seriously or repeatedly deficient or late in its performance of the Work, other than due to a force majeure event under the provisions of Section XVIII, or (3) is implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may assume the performance of all or any portions of the Work as EPA determines necessary.  Settling Defendant may invoke the procedures set forth in Section XIX (Dispute Resolution), Paragraph 83, to dispute EPA's determination that takeover of the Work is warranted under this Paragraph.

106.    Notwithstanding any other provisions of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law. For purposes of this Paragraph only, the term "response actions" does not include actions to compel Settling Defendant to conduct or pay for response actions at the Work Area; the United States' rights to compel Settling Defendant to conduct or pay for response actions are governed by the remainder of this Section XXI.

## XXII.  COVENANTS BY SETTLING DEFENDANT

107.    Subject to the reservations in Paragraph 109, Settling Defendant hereby covenants not to sue and agrees not to assert any claims or causes of action against the United States with respect to the Work, the Work Area, past response actions, Past Response Costs, Phase 1 RA Response Costs, Phase 2 RA Response Costs, Non-Capped Phase 1 Costs, Non-Capped Phase 2 Costs, and Post-Phase 2 Costs, this Consent Decree, or (if subparagraph 98.f, above, becomes applicable) the Upper Hudson River, including, but not limited to:

a.    any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b.    any claims against the United States under CERCLA Sections 107 or 113 related to the Site; or

c.    any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

Nothing in this Paragraph 107 shall be construed to preclude Settling Defendant from pursuing dispute resolution under Section XIX (Dispute Resolution).  Nor shall anything in this Paragraph 107 be construed to preclude the claims asserted by Settling Defendant in *General Electric Co. v. Johnson* (D.D.C.), Civ. No. 1:00CV02855 (JDB), including any appeals from the District Court's decisions in that case.

108.    Except as provided in Paragraph 116, the covenants not to sue in Paragraph 107 of this Consent Decree shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in subparagraphs 104.d. through 104.g. and 104.j. through 104.p., but only to the extent that Settling Defendant's claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

109.    The Settling Defendant reserves, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place

where the act or omission occurred.  However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendant's plans or activities.  The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

110.     Settling Defendant agrees that it will not, in this action, seek to challenge the remedy chosen by EPA in the ROD or to review any order issued by EPA under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), directing Settling Defendant to implement such remedy; provided, however, that if Settling Defendant does not elect (pursuant to subparagraph 15.c. above) to implement Phase 2, then Settling Defendant reserves any rights it may have under CERCLA to challenge Phase 2 of the remedy, or an order for the implementation of Phase 2, if the United States proceeds thereafter under the Complaint, or an amended complaint, to seek to compel Settling Defendant to implement Phase 2 of the Remedial Action and/or to reimburse the United States for response costs incurred in connection with the implementation of Phase 2, or the United States files a separate judicial action against Settling Defendant seeking the same relief.

111.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

### XXIII.  Effect of Settlement; Contribution Protection

112.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Decree may have under applicable law.  Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

113.     The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Consent Decree.  For purposes of the preceding sentence, the "matters addressed" in this Consent Decree are all Past Response Costs, Phase 1 RA Response Costs, and Non-Capped Phase 1 Costs, and the Work, provided, however, that if Settling Defendant notifies EPA, pursuant to subparagraph 15.c, above, that it will implement Phase 2 pursuant to this Consent Decree, then the "matters addressed" in this Consent Decree shall be all Past Response Costs, Phase 1 RA Response Costs, Phase 2 RA Response Costs, Non-Capped Phase 1 Costs, Non-Capped Phase 2 Costs, and Post-Phase 2 Costs, and all response actions taken or to be taken and all response costs incurred or to be incurred by the United States or any other person with respect to PCB contamination in the Upper Hudson River or the Existing Contamination.  However, the "matters addressed" in this Consent Decree do not include those response costs or response

actions as to which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Consent Decree), in the event that the United States asserts rights against Settling Defendant coming within the scope of such reservations.

114.    The Settling Defendant agrees that with respect to any suit or claim for contribution brought by it for matters related to this Consent Decree, it will notify the United States and the State in writing no later than 60 days prior to the initiation of such suit or claim.

115.    The Settling Defendant also agrees that with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, it will notify in writing the United States and the State within 10 days of service of the complaint on Settling Defendant. In addition, Settling Defendant shall notify the United States and the State within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

116.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, natural resource damages, or other appropriate relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiff).

## XXIV.  Certification

117.    By entering into this Consent Decree, Settling Defendant certifies that to the best of its knowledge and belief, it has requested all information that is in the possession of its agents, contractors or other representatives retained with respect to the Sediment Processing/Transfer Facility Property(ies) which relates in any way to any Existing Contamination at such property(ies), and has fully and accurately disclosed to EPA all such information and any other information known to Settling Defendant and all information in the possession or control of its officers, directors, and employees, including information received from its agents, contractors or other representatives, which relates in any way to any such Existing Contamination.  Settling Defendant also certifies that to the best of its knowledge and belief, as of the date of signature of this Consent Decree by Settling Defendant, it has not caused or contributed to a release or threat of release of hazardous substances or pollutants or contaminants at the Sediment Processing/Transfer Facility Property(ies), except to the extent that natural forces caused the movement of PCBs from the Hudson River onto such Property(ies).  If the United States believes that Settling Defendant failed to fully and accurately disclose any of the above-referenced information to EPA, it may so notify Settling Defendant.  Settling Defendant may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute the United States' position. If, following completion of dispute resolution proceedings under Section XIX (Dispute Resolution), Settling Defendant is found to have failed to fully and accurately disclose to EPA material information which should have been disclosed to EPA under the first sentence of this Paragraph, the covenant not to sue contained in subparagraph 98.e., above, shall be null and void and the United States reserves all rights it may have regarding the Existing Contamination.

## XXV. ACCESS TO INFORMATION

118.    Settling Defendant shall provide to EPA upon request, copies of all documents and information within its possession or control or that of its contractors or agents relating to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work (except those documents and other information which are subject to the attorney-client privilege or are attorney work product).  Upon request by EPA, Settling Defendant shall also make available to EPA at a reasonable time and place, for purposes of assisting EPA in overseeing the Work or implementing this Consent Decree, one or more representatives of Settling Defendant with knowledge of relevant facts concerning the performance of the Work, to discuss the Work.

119.    Business Confidential and Privileged Documents.

a.    Settling Defendant may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Settling Defendant that it has not substantiated its claim of confidentiality and that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendant.

b.    Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendant asserts such a privilege in lieu of providing documents, it shall provide the Plaintiff with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information: and (6) the privilege asserted by Settling Defendant.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

120.    No claim of confidentiality or privilege (other than business confidentiality, if applicable, and provided that such claim of confidentiality is not precluded by 42 U.S.C. § 9604(e)(7)(F) or other applicable law) shall be made with respect to any data collected or generated in connection with the Work, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other factual information evidencing conditions at or around the Site.

## XXVI. RETENTION OF RECORDS

121.   Records to be Retained and Length of Retention Period

a.      Until 10 years after Settling Defendant's receipt of EPA's notification pursuant to subparagraph 58.b of Section XIV (Certification of Completion), Settling Defendant shall preserve and retain, and instruct its contractors and agents to preserve and retain, all non-identical copies of the following records and documents (including records or documents in electronic form) now in its (or their) possession or control or which come into its (or their) possession or control regardless of any corporate retention policy to the contrary:

(1)      Documents relating to Settling Defendant's liability under CERCLA with respect to the Site;

(2)      The final versions of correspondence with and submittals made to EPA and the State specifically discussing or otherwise related to the performance of the Work under this Consent Decree;

(3)      The final versions of correspondence between Settling Defendant (including Settling Defendant's employees, agents, accountants, contractors, or attorneys) and the laboratories retained by Settling Defendant to analyze samples collected by Settling Defendant pursuant to this Consent Decree;

(4)      The final versions of correspondence between Settling Defendant (including Settling Defendant's employees, agents, accountants, contractors, or attorneys) and the contractors retained by Settling Defendant (other than laboratories) that documents the Work performed pursuant to this Consent Decree;

(5)      Records and documents reflecting the collection, analysis, and chain-of-custody of samples and the analytical reports of chemical or physical sampling (including, but not limited to, raw data, chromatograms, and QA/QC documentation) conducted during and relating to the performance of the Work required under this Consent Decree;

(6)      Field notes and the final versions of technical reports relating specifically to Settling Defendant's plans for or conduct of activities specifically related to the Work required under this Consent Decree;

(7)      Records and documents documenting the generation, storage, transportation, and disposal of Waste Materials pursuant to this Consent Decree;

(8)      The final versions of records and documents documenting the protocols to be followed and/or in fact followed by Settling Defendant in the performance of the Work required under this Consent Decree; and

(9)    Other records and documents necessary to document the Work performed and/or the data collected under this Consent Decree.

b.    For purposes of this Paragraph, where no "final" version of a document or record was created, the last draft of such document or record shall be deemed to be the "final" version.

c.    Nothing in this Consent Decree shall abrogate or otherwise affect Settling Defendant's record retention obligations pursuant to Section XVIII (Record Preservation) of the RD AOC and Section XV (Record Preservation) of the Sampling AOC.

122.    At the conclusion of this document retention period, Settling Defendant shall notify the United States at least 90 days prior to the destruction of any such records or documents described in Paragraph 121, and, upon request by the United States, Settling Defendant shall deliver, at no cost to EPA, any such records or documents to EPA (except for privileged records or documents).  Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendant asserts such a privilege, it shall provide the Plaintiff with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendant.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

123.    At any time prior to the end of the 10-year document retention period, Settling Defendant may elect to satisfy its obligation to preserve records and documents pursuant to this Section by providing EPA with a copy of such records or documents.  Upon providing a copy to EPA of records or documents, Settling Defendant shall no longer be obligated under Paragraph 121, above, to retain those records or documents.

124.    Nothing in this Consent Decree shall constitute, or be construed as, an abrogation or waiver of (i) any of Settling Defendant's obligations to maintain records under applicable law including, but not limited to, the Federal Rules of Civil Procedure, or (ii) any privilege afforded Settling Defendant under applicable law including, but not limited to, the Federal Rules of Civil Procedure.

XXVII. Notices and Submissions

125.    Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, or to the State, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other individuals listed below, or their successors, in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, the State, and the Settling Defendant, respectively.

<u>As to the United States or EPA:</u>

Three paper copies (one unbound) and one electronic copy (on CD-ROM or DVD) of all work plans and technical reports and one paper copy of all other written communications shall be sent to:

> Team Leader, Hudson River Team
> Emergency and Remedial Response Division
> United States Environmental Protection Agency, Region 2
> 290 Broadway, 19th Floor
> New York, New York  10007-1866

In addition, one paper copy of all work plans, technical reports and other written communications shall be sent to:

> Chief, New York/Caribbean Superfund Branch
> Office of Regional Counsel
> United States Environmental Protection Agency, Region 2
> 290 Broadway, 17th Floor
> New York, New York  10007-1866
> Attn:   Hudson River PCBs Superfund Site Attorney

If so requested by EPA, and in addition to the document submission requirements above, Settling Defendant shall submit one electronic copy (on CD-ROM or DVD) of all work plans and technical reports to an EPA technical consultant that EPA will specify at the time of such request.

One copy of all written communications other than work plans and technical reports shall also be sent to:

> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Washington, D.C.  20044-7611
>
> Re: DJ # 90-11-2-529

<u>As to the State and the Federal Trustees for Natural Resources:</u>

When submitting any document or other written communication to EPA or the United States under this Consent Decree, Settling Defendant shall simultaneously send copies to the State and to the Federal Trustees for Natural Resources, as follows:

Three paper copies (one unbound) and one electronic copy (on CD-ROM or DVD) of all work plans and technical reports and one paper copy of all other written communications, shall be sent to:

> Director, Division of Environmental Remediation
> New York State Department of Environmental Conservation
> 625 Broadway, 12th Floor
> Albany, New York  12233-7011
> Attn:   Hudson River PCBs Superfund Site

Two paper copies and one electronic copy (on CD-ROM or DVD) of all work plans and technical reports and one paper copy of all other written communications shall be sent to:

> Lisa Rosman
> Coastal Resource Coordinator
> NOAA
> 290 Broadway, 18th Floor
> New York, NY 10007-1866

> Robert Foley
> Hudson River Case Manager
> U.S. Fish and Wildlife Service
> U.S. Department of the Interior
> 300 Westgate Center Dr.
> Hadley, MA   01035

Two paper copies and one electronic copy (on CD-ROM or DVD) of all work plans and technical reports (except for engineering plans and drawings), and one paper copy of all other written communications shall be sent to:

> Director, Bureau of Environmental Exposure Investigation
> New York State Department of Health
> 547 River Street
> Troy, New York 12180
> Attn:   Hudson River PCBs Superfund Site

If agreed to by EPA, specific notifications and other documents to be submitted by Settling Defendant pursuant to this Consent Decree may be submitted to EPA, the State and the Federal Trustees for Natural Resources by electronic mail.  In addition to the document submission requirements above, Settling Defendant shall, if requested by EPA, send up to three additional copies of specified work plans or other documents to EPA and/or NYSDEC.

As to the Settling Defendant:

>John G. Haggard
>GE Project Coordinator
>Hudson River Program
>General Electric Company
>320 Great Oaks Office Park, Suite 319
>Albany, New York 12203

126.    Unless otherwise agreed to by EPA, all data submitted by Settling Defendant pursuant to this Consent Decree shall be provided in electronic format, as well as hard copy format.  The electronic version shall be provided no later than the hard copy.  The electronic copy of any narrative that accompanies such data shall be provided in Portable Document Format, or ".pdf,"  and all data shall be provided in database files to be specified by EPA.  All ArcView layers shall be provided as shape files.

## XXVIII. EFFECTIVE DATE

127.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court.

## XXIX. RETENTION OF JURISDICTION

128.    This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendant for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling either of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof.

## XXX. APPENDICES

129.    The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW, and including the following attachments: Critical Phase 1 Design Elements; Remedial Action Monitoring Scope; Performance Standards Compliance Plan Scope; Remedial Action Community Health and Safety Program Scope; Operation, Maintenance, and Monitoring Scope; and Certification Unit Completion Approval/Certification Forms.

"Appendix C" is the draft easement

"Appendix D" is the description of the Sediment Processing/Transfer Facility Properties.

XXXI. Community Relations

130.     Settling Defendant shall cooperate with EPA in providing information regarding the Work to the public.  As requested by EPA, Settling Defendant shall participate in the preparation of such information for dissemination to the public.  As requested by EPA, Settling Defendant also shall participate in public meetings, including but not limited to meetings of the Community Advisory Group, which may be held or sponsored by EPA to explain activities at or relating to the Work Area.

XXXII. Modification

131.     Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Defendant.  All such modifications shall be made in writing.

132.     Except as provided in subparagraph 15.b, Paragraph 20 (Modification of the SOW or Related Work Plans), and Section VII (Remedy Review), no material modifications shall be made to this Consent Decree (including the Appendices hereto) without notification to and written approval of the United States, Settling Defendant, and the Court, if such modifications fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R. 300.435(c)(2)(ii). Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.  Modifications to this Consent Decree (including the Appendices hereto) that do not materially alter those documents, or material modifications to this Consent Decree (including the Appendices hereto) that do not fundamentally alter the basic features of the selected remedy within the meaning of 40 C.F.R.300.435(c)(2)(ii), may be made by written agreement between EPA, after providing the State with a reasonable opportunity to review and comment on the proposed modification, and (except as provided in subparagraph 15.b, Paragraph 20, and Section VII, above) Settling Defendant.  Such modifications shall be dated, sequentially numbered, initialed by the Parties, and filed in the document repository for the Site at the offices of EPA Region 2.

133.     Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

XXXIII. Lodging and Opportunity for Public Comment

134.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

135.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIV. Signatories/Service

136.    The undersigned representative of the Settling Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice respectively certify that they are fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

137.    Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendant in writing that it no longer supports entry of the Consent Decree.

138.    Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of Settling Defendant with respect to all matters arising under or relating to this Consent Decree.  Settling Defendant hereby agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  The parties agree that Settling Defendant need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

## XXXV. Final Judgment

139.    This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding between the Parties with respect to the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

140.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and the Settling Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 2nd DAY OF NOVEMBER, 2006.

_____
David N. Hurd
District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. General Electric Company, relating to the Hudson River PCBs Superfund Site.

FOR THE UNITED STATES OF AMERICA

_____
Date

_____
Kelly A. Johnson
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C.  20530

_____
Date

_____
Brian Donohue
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611

_____
Date

_____
Peter Kautsky
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. General Electric Company, relating to the Hudson River PCBs Superfund Site.

GLENN T. STUDDABY
United States Attorney
Northern District of New York

_____

Date

By: _____

[Name]
Assistant United States Attorney
Northern District of New York
445 Broadway
Albany, New York 12207-2924
(518) 431-

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. General Electric Company, relating to the Hudson River PCBs Superfund Site.


_____
Date

_____
Kathleen C. Callahan
Acting Regional Administrator
U.S. Environmental Protection Agency,
  Region 2
290 Broadway, 26th Floor
New York, NY 10007-1866

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. General Electric Company, relating to the Hudson River PCBs Superfund Site.

FOR GENERAL ELECTRIC COMPANY

_____

Date

Signature: _____

Name (print): _____

Title:   _____

Address:_____

_____

_____

_____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): _____

Title:   _____

Address:_____

_____

_____

Ph. Number:   _____

# APPENDIX A
# RECORD OF DECISION

# APPENDIX B

# STATEMENT OF WORK

# APPENDIX C
# DRAFT EASEMENT

# APPENDIX D
# DESCRIPTION OF SEDIMENT
# PROCESSING/TRANSFER
# FACILITY PROPERTIES